[File No. 6187.]

MINNIE HECTOR SMITH, Respondent, v. MARION E. GRILK; Frances E. Plath, and Marion E. Grilk, as Executors of the Estate of Charles Grilk, Deceased; and American Amusement Company, a Corporation, and MARION E. GRILK; and Frances E. Plath and Marion E. Grilk, as Executors of the Estate of Charles Grilk, Deceased, Appellants.

(250 N. W. 787.)

Opinion filed August 24, 1933. Rehearing denied October 31, 1933.

*Richardson, Thorp & Wattam,* for appellants.
*Conmy, Young & Conmy,* for respondent.

BIRDZELL, J. This is an appeal from a judgment in favor of the plaintiff in an action to foreclose a mortgage and is here for trial de novo. The question argued concerns only the rents during the period of redemption. It is the contention of the appellants that the mortgagor is entitled to the rents, while the respondent claims them under an assignment and contends that a receiver was properly appointed for the purpose of collecting rent during the period of redemption.

There is a motion by the plaintiff to dismiss the appeal. The basis of the motion is that the notice of appeal was not served upon the defendant, the American Amusement Company, as an adverse party, Comp. Laws, 1913, § 7821. This defendant is hardly more than a nominal party. Its pleading and the record disclose that its interest in the litigation is solely to the end that it may pay the rent to the party legally entitled to the same and thereby be discharged of its admitted obligation. It is in no other respect interested in the foreclosure proceeding. It does not appear that this defendant can be prejudicially affected by any modification of the judgment regarding rents at the instance of the parties who alone are concerned with the right to them. Where the record shows that a party to the judgment has no interest that would be affected by the appeal, such party is not a necessary party to the appeal. See Galveston, H. & N. R. Co. v. House (C. C. A. 5th) 102 F. 112; United States v. Exploration Co. (C. C. A. 8th) 203 F. 387; Germain v. Mason, 12 Wall. 259, 20 L. ed. 392; Williams v. Santa Clara Min. Asso. 66 Cal. 193, 5 P. 85; Thompson v. Ellsworth, 1 Barb. Ch. 624; 2 Hayne, New Tr. Appeal (Rev. ed.) § 210; 2 Cal. Jur., §§ 120–122.

The term "adverse party" within an appeal statute such as § 7821, Compiled Laws of 1913, has been well defined in the case of Thompson v. Ellsworth, 1 Barb. Ch. 624, as follows: "The adverse party, . . . means the party whose interest in relation to the subject of the appeal is in conflict with the reversal of the order or decree appealed from, or the modification sought for by appeal." The record in the instant case shows that the Amusement Company has no interest whatsoever in relation to the subject of the appeal that is in conflict with the reversal or modification sought on this appeal. All the judgment gives it with respect to rent is an acquittal of its obligation upon payment to the proper party, and it will be equally acquitted of its obligation under the lease whether it pay the rent during the redemption period to the appellants or whether it pay to the respondent. The motion is denied.

The facts in this case, in so far as they affect the question at issue, are as follows: Charles Grilk, since deceased, in November, 1926, executed a mortgage to Minnie Hector Smith for $35,000, covering the property known as the Orpheum Theater in the city of Fargo. The property was leased to the American Amusement Company, a party defendant in this action. At the time the mortgage became due in November, 1931, there was due on it the sum of $31,000 principal. Concurrently with the execution of the mortgage and by a separate instrument, Grilk assigned to the mortgagee the rents, issues and profits of the property and to that end the existing lease. The assignment carried with it an express power to the mortgagee to collect the rents as they should become due, and it contained this stipulation: ". . . this assignment, however, to become effective only upon a default in the terms of the mortgage hereinafter mentioned and not otherwise." The term of the attornment or assignment was expressed to be until the notes and mortgage "shall have been fully paid and satisfied," and the document contained a power of attorney purporting to authorize the assignee to renew any and all leases and to make new leases or agreements in regard to the leasing of the premises as the assignee should think proper. The mortgage contained this provision, "And the said party of the first part hereby agrees that the holder of this mortgage in any action to foreclose it, shall be entitled without regard to the adequacy of any security for the debt, to the appointment of a

receiver of the rents and profits of the said premises; and that the purchaser of said premises upon sale under foreclosure by advertisement or action, shall be entitled to immediate possession." There is no controversy concerning rents except as to those accruing during the period of redemption.

Prior to the decree in foreclosure the Amusement Company, with the express or tacit approval of the defendants, paid rent to the plaintiff. Upon the foreclosure sale the plaintiff bid for the property $27,423.40, leaving a deficiency judgment of $5,000. No question is raised here concerning any payments made prior to the foreclosure sale, but the appellants contend that that portion of the judgment appointing a receiver and directing the payment of rents to the receiver during the year for redemption is erroneous.

Section 6740, Compiled Laws of 1913, provides: "A mortgage does not entitle the mortgagee to the possession of the property, unless authorized by the express terms of the mortgage; but after the execution of a mortgage the mortgagor may agree to such change of possession without a new consideration. No person whose interest is subject to the lien of a mortgage may do any act which will substantially impair the mortgagee's security."

Section 7762 of the 1925 Supplement to the Compiled Laws of 1913 (chapter 132, Laws of 1919) provides: "The debtor under an execution or foreclosure sale of his property shall be entitled to the possession, rents, use and benefit of the property sold from the date of such sale until the expiration of the period of redemption."

The main contention of the appellant is based upon this statute. It is said, in substance, that it evidences a policy to secure to the mortgagor during the redemption period all the benefits of possession, including the rents and profits.

The history of our legislation concerning mortgages and their foreclosure shows that almost from the beginning a foreclosure sale affected the possessory right of the mortgagor. By § 11 of chapter 15 of the Session Laws of Dakota Territory for 1864–65, it was provided that no mortgagor should be entitled to retain possession of the mortgaged premises after the sale thereof, although having a year thereafter in which to redeem. Similar or analogous provisions remained in our statutes down to the year 1919. Hence, along with § 6740, supra,

which was § 1733 of the Civil Code of 1877, there was also a provision to the effect that the purchaser from the time of sale until redemption and the redemptioner from the time of his redemption until another redemption was entitled to receive from the tenant in possession the rents of the property sold, or the value of the use and occupation thereof. Section 353, Code of Civil Procedure, 1877; § 7762, supra. The two sections in their treatment of the right to possession were consistent. While the mortgage only created a lien and did not in itself entitle the mortgagee to possession, the statute expressly recognized as valid any provision in a mortgage that would give possession to the mortgagee in advance of foreclosure. And in the absence of any specific agreement, under § 7762 and going as far back as the session of 1864–65 of the territorial legislature, the purchaser at the sale would be entitled to possession and the benefits of possession immediately after the sale. When in 1919 the legislature changed the law with respect to the possessory right of the debtor or mortgagor during the period of redemption, it established a policy that is altogether different from that evidenced by the old statutes, and we are confronted with the question as to whether or not the newer legislation is so inconsistent with the former that the two cannot exist side by side. This act was in the form of an amendment and re-enactment of § 7762 of the Compiled Laws of 1913. It is similar to statutes that exist in some of the other states, notably Minnesota, Oregon and Washington. In those states the statutes had undergone construction before the similar principle was adopted here.

The Minnesota statute provided: "A mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure." See § 8077, General Statutes of Minnesota 1913.

The Oregon and Washington statutes were as follows: "A mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure and sale according to law." See § 323, chapter 4, title 1, General Laws of Oregon, 1843–1872 (now amended with a proviso added, volume 1, Oregon Code Annotated, 1930 Official edition, § 5–112); 3 Remington's Revised Statutes of Washington, Annotated, § 804.

In the case of Cullen v. Minnesota Loan & T. Co. 60 Minn. 6, 61 N. W. 818, the Minnesota court had occasion to consider the statute above quoted in an action involving the rents on the Ryan Hotel property in St. Paul, which had been mortgaged, the mortgage being in default. The trust deed or mortgage contained the express provision " 'in case of default for 60 days in the conditions of the mortgage, to demand, receive, and receipt for at any time, and as often as such default shall occur, any rents due or to become due from any tenant of said premises, or any part of the same,' and apply the same in payment of such sum as was or may then be due under the terms of such bonds and mortgage," and simultaneously power of attorney was given to the trust company to enable it to collect the rents. There was a tenant in the building under a five-year lease at an annual rental of $5,750, payable in monthly installments in advance. Concerning these provisions, in light of the statute, the court said (61 N. W. 819) : "We are of the opinion that this power of attorney should be considered, for all purposes, as a part of the mortgage, and of the same force and effect as if inserted in it. But we are of the opinion that under the statute of this state the power of attorney cannot be given the effect of pledging the rents in question for the payment of either the interest or principal of these bonds. Section 29, chap. 75, Gen. Stat. 1878 (§ 5861, Gen. Stat. 1894), provides: 'A mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure.' It is well settled that the effect of this short section is to change the nature of a mortgage, so that it is but a mere lien, and not a conveyance of the legal title. Yet this change is rather implied than express; *but the change as to the right of possession is not implied,—it is express.* The statute does not expressly say that a mortgage shall not be deemed a conveyance so as to pass the legal title, but it does expressly say that it shall not be deemed a conveyance so as to entitle the mortgagee to possession without a foreclosure; and § 42, chap. 81, and § 11, chap. 84, Gen. Stat. 1878 (§§ 6072, 6118, Gen. Stat. 1894), provide at what stage in the foreclosure possession may be taken from the mortgagor and those holding under him. Unquestionably, it was always competent for the debtor, by the use of apt words in his contract, to create a mere lien on his land to secure the payment of the debt, without conveying the legal

title to the creditor, or giving him the right to possession; but before the passage of this statute he could by the use of other apt words, having that meaning, convey the legal title, and give the creditor the right to possession before foreclosure, as security for his debt. The statute was passed to prevent him from doing this, and, so far as his contract contravenes the policy of this statute, it cannot be enforced. See Teal v. Walker, 111 U. S. 251, 28 L. ed. 418, 4 S. Ct. 420; Seckler v. Delfs, 25 Kan. 162. See also Donnelly v. Simonton, 7 Minn. 167, Gil. 117; Adams v. Corriston, 7 Minn. 456, Gil. 372; Berthold v. Holman, 12 Minn. 335, Gil. 221; Berthold v. Fox, 13 Minn. 501, Gil. 462, 97 Am. Dec. 243. But, at at a time wholly subsequent to the making of the mortgage, the mortgagee may take possession, with the consent of the mortgagor, without violating the policy of the statute. Fee v. Swingly, 6 Mont. 596, 13 P. 375." (Emphasis is ours.)

It was further held that the statute did not prohibit the pledging of rents for the preservation of the property, nor an agreement that they should be applied to the payment of taxes and insurance, but beyond this the assignment and power of attorney to collect were held invalid.

In Wolford v. Cook, 71 Minn. 77, 80, 73 N. W. 706, 707, 70 Am. St. Rep. 315, 318, the same view was again taken of the statute, where it is said: "There is evidence tending to show that plaintiff claimed the right to collect the rents and apply the proceeds on the note by virtue of some agreement between himself and the defendant, made contemporaneously with the execution of the mortgage. If so, the agreement was not enforceable. Cullen v. Minnesota Loan & T. Co. 60 Minn. 6, 61 N. W. 818."

Again, in Orr v. Bennett, 135 Minn. 443, 446, 161 N. W. 165, 4 A.L.R. 1396, 1398, the court said: "The statute provides that a mortgagee of land is not entitled to possession without foreclosure. Gen. Stat. 1913, § 8077. This means that the mortgagor has the right of possession, and the right to the rents and profits of the land incident to possession, during the statutory year allowed for redemption, and until the foreclosure is complete; and any stipulation in the mortgage, or contemporaneous with it, pledging the rents and profits of the mortgaged land to the payment of the mortgage debt, contravenes the policy of this statute, and is void. Cullen v. Minnesota Loan & T. Co. 60

Minn. 6, 61 N. W. 818; Wolford v. Cook, 71 Minn. 77, 73 N. W. 706, 70 Am. St. Rep. 315."

The principle of these cases was reaffirmed in Fidelity-Philadelphia Trust Co. v. West, 178 Minn. 150, 226 N. W. 406, and it runs through all the Minnesota cases without qualification. It is recognized, however, that after a mortgage is in default and for a new and independent consideration, such as an extension of time, the mortgagee may acquire rights under an assignment of rents, the same as any other creditor may acquire such rights, even though the rents are to be applied on mortgage indebtedness. Farmers' Trust Co. v. Prudden, 84 Minn. 126, 86 N. W. 887.

A similar view was taken of the Oregon statute by the United States Supreme Court in Teal v. Walker, 111 U. S. 242, 28 L. ed. 415, 4 S. Ct. 420. The court held invalid, as contrary to the public policy of the state of Oregon, a stipulation in a defeasance agreement to the effect that upon default in the payment of the note secured by the mortgage the mortgagor would deliver to the trustee the possession of the mortgaged premises. See also Couper v. Shirley (C. C. A. 9th) 75 F. 168.

In Norfor v. Busby, 19 Wash. 450, 53 P. 715, the Washington statute was held to be expressive of the public policy of the state to the effect that a mortgagee could not acquire possession under the mortgage, nor the right to collect rents and profits, until there had been a completed foreclosure; and to the same effect is Western Loan & Bldg. Co. v. Mifflin, 162 Wash. 33, 297 Pac. 743, notwithstanding an assignment of the rents to be effective upon default which was incorporated in the mortgage. See also Wagar v. Stone, 36 Mich. 364, and cases cited in note in 4 A.L.R. 1408.

This court has heretofore had occasion to consider the change in policy that was evidenced by the enactment of chapter 132, Session Laws of 1919. Commenting upon the original provision (Comp. Laws 1913, § 7762), authorizing the purchaser to collect rents or recover the value of the use and occupation, the court said, in Farm Mortg. Loan Co. v. Pettet, 51 N. D. 491, 496, 200 N. W. 497, 499, 36 A.L.R. 598, 602:

"It would seem that the legislative purpose was to insure beyond

doubt that the mortgagor would not, against his will, be ousted from the possession of the premises and that the accomplishment of this purpose necessarily excludes the notion that such ouster may be indirectly effected through the medium of a court of equity. *That the legislature deemed the right to the rents and profits to follow as a necessary incident to the right of possession,* is made clear by the course of legislation on the subject and is suggested by the fact that it was expressly provided that the purchaser at the foreclosure sale should be entitled to the rents and profits during the period of redemption, though in the event of redemption he was required to account therefor to the redemptioner."

After quoting chapter 132, Laws of 1919, the court said (51 N. D. 491, 504):

"We believe that the legislature intended to settle beyond cavil the question of the right of the mortgagor to the use and benefit of the property until his title to the premises was divested by foreclosure and expiration of the period of redemption. It must be noted that the legislature here is dealing with a fundamental, as distinguished from a remedial, right. It must also be noted that there is, in the enactment of this statute a complete reversal of legislative policy. Prior thereto, under § 7762, Comp. Laws 1913, the purchaser was entitled to receive from the tenant in possession the rents of the property purchased or the value of the use and occupation thereof. This statutory enactment, prior to the amendment, gave the purchaser a valuable right. See Crippen v. Morrison, 13 Mich. 23, supra. The rule of the statute was contrary to the current of authority in this country in the absence of a similar statutory provision. It was generally held, at least in those jurisdictions where the lien theory of the mortgage prevailed, that the mortgagor was entitled to the rents and profits and the beneficial use of the property until his title was divested in perfected foreclosure proceedings. Such, however, was not the legislative policy of this jurisdiction. The legislature was not satisfied to leave the question as to the rights to the rents and profits to be solved by reference to common law or general rules; *it affirmatively, in language that cannot be misunderstood, says not only that the mortgagor shall be entitled to the possession and the rents, but that he shall be entitled to the 'use and*

*benefit of the property, during the period of redemption.* There are no conditions or qualifications attached. It is difficult, without resorting to technical reasoning, to see how the literal import of the language of the statute can be avoided. There can be no question about the legislative purpose. It was to insure the mortgagor, for himself and his family, the beneficial use of the property, during the period of redemption. We have no power to read conditions, exceptions, or qualifications into this statute; or to permit that to be done by indirection which the legislature has said shall not be directly accomplished."

Nowhere, we believe, is there a stronger expression of a legislative policy to protect the mortgagor in the enjoyment of the benefits of possession of the mortgaged property during the period of redemption and until completion of the foreclosure proceedings than that quoted from the opinion of this court immediately above. We were there concerned with determining whether or not, consistently with the policy evidenced by this statute, the court, in the exercise of its equity powers, should appoint a receiver under § 7588 of the Compiled Laws of 1913. But the statement of the policy of the statute is as applicable to a controversy involving directly the question of the right to rents as it is to the existence of a remedy through the instrumentality of a receiver.

A further word with regard to the case of Farm Mortg. Loan Co. v. Pettet, supra: It was there specifically held that since the enactment of chapter 132, Sessions Laws of 1919, a court of equity has no power to deprive the mortgagor of rents, use and benefit of the property by appointing a receiver to collect the rents pending the completion of the foreclosure. It is recognized by a leading authority on mortgages, 2 Jones, Mortg., 8th ed., § 827, that even where the rents and profits of mortgaged property are expressly pledged as security for the mortgage debt, as is done in the case at bar, with the right of the mortgagee to take possession upon default, the mortgagee is not entitled to the rents and profits until he takes actual possession, or until possession is taken in his behalf by a receiver. Furthermore, the general doctrine prevailing in jurisdictions where the mortgagor is the owner of the fee and the mortgagee's interest is that of a lien holder only, is asserted in § 826, Jones, Mortg. supra, as follows: "Also under such a statute, although the mortgage contains a stipulation which seems to give the

mortgagee the right after condition broken to take possession and receive the rents and profits, yet inasmuch as such a mortgage gives only a lien upon the mortgaged property and the rents and profits, and this lien can be enforced only by action, the stipulation does not transfer to the mortgagee the title to the rents. and profits."—Citing Seckler v. Delfs, 25 Kan. 159.

The author states but one exception to this rule, and that is in case the property is shown to be inadequate to meet the mortgage debt, in which case the court may appoint a receiver of the rents and profits pending proceedings to foreclose, but this exception is in effect denied in this state by the rule announced in the Pettet Case.

Since there is no way that the mortgagee in the instant case can be placed in possession until the expiration of the period of redemption, the assignment to the mortgagee can in fact amount to nothing more than what it really is, namely, a mortgage.

In view of the overwhelming weight of authority in jurisdictions where the lien theory of mortgages obtains and where statutes exist that are designed to protect the possessory rights of the mortgagor until foreclosure proceedings have been completed and the right of redemption entirely lost, we are of the opinion that any contract accompanying a mortgage, or which is incorporated in a mortgage, whereby the rents and profits of the mortgaged property are rendered as further security for the mortgage obligation, is invalid to the extent that it contravenes the policy of our statute enacted in 1919. This act is clearly designed to secure to the mortgagor the possession of the mortgaged property, including the rents, use and benefit of the property from the date of the foreclosure sale until the expiration of the period of redemption. Its policy is identical with that of the statute considered in the cases discussed above and one that can only be made effective, in our opinion, by following the rule of those decisions. The change of policy from that evidenced by the original statute, § 7762, Compiled Laws of 1913, is at once so radical and so inconsistent with the complete freedom of the mortgagor and mortgagee to contract at the time of the mortgage transaction with respect to the right of possession and rents and profits during the redemption period that it negatives the existence of such right, and, consequently, repeals by implication that portion of § 6740, Compiled Laws of 1913, which recognizes

that a change of possession may be authorized by the express terms of the mortgage.

Reversed and remanded for further proceedings not inconsistent with this opinion.

BURKE, NUESSLE and BURR, JJ., concur.

CHRISTIANSON, J.  I dissent.

### (On Petition for Rehearing)

BIRDZELL, Ch. J.  In a petition for rehearing, counsel renew their contention that the appeal should be dismissed because notice was not served on the American Amusement Company.  They state that the Amusement Company is adversely affected by the reversal to the extent that it does not now know what its rights and liabilities are and that, since no supersedeas bond was furnished on the appeal, the respondent is entitled to the rents until the judgment is reversed.

We believe it to be clear from the original opinion that the Amusement Company is fully protected by the original judgment to the extent that it might have paid rent in reliance thereon prior to knowledge of its reversal.  When we said in the original opinion that the record showed the Amusement Company had no interest in relation to the subject of the appeal that was in conflict with the reversal or modification sought it was implied, clearly we thought, that the Amusement Company could with perfect safety comply with the judgment appealed from so long as it was not reversed and so long as it was not served with notice of appeal.  The contest over the rents was and is as to whether for the redemption period involved, they rightfully belonged to the appellants or to the respondent.  If pending a determination of that issue in this court they have been paid to the respondent, the respondent is of course obligated to return them or account for them upon a reversal of the judgment in her favor, but with this the Amusement Company is not concerned.

It is further suggested in the petition that if a supersedeas bond had been furnished by the appellant, the respondent would have been pro-

tected as to the "deficiency." By deficiency in this connection we presume counsel mean the difference between the amount of the judgment and the bid at foreclosure sale. We do not understand how a supersedeas furnished under § 7829 of the Compiled Laws of 1913, where the appeal was not taken until long after a sale of the premises under the judgment would have protected the respondent as to such deficiency or as to any rent collected under an erroneous judgment. It was optional with the appellants whether they would give a supersedeas bond or an undertaking for costs. Section 7829 gives an appellant the right to stay the sale of mortgaged premises by putting up a supersedeas bond conditioned to pay any deficiency. But where the sale has been had before an appeal is taken, such condition in the bond would be inappropriate.

Again counsel say "Because of the defendant Grilk's failure to put up a supersedeas bond we think we are entitled to the rents until our judgment is reversed." It is of course true that where a supersedeas bond is not furnished the judgment may properly be enforced pending the appeal, but it is equally true that if the judgment be reversed the appellant would be entitled to recover back whatever he had lost by reason of the interim enforcement of the erroneous judgment.

Counsel further state that owing to the fact that a deficiency judgment was obtained in the foreclosure proceeding they had filed no claim against the estate of the mortgagor and consequently in case of redemption the mortgagee will be "short because of reliance upon the court's decree" and suggest that equity should relieve against this situation. The difficulty with this position is that the respondent could not properly and safely rely upon the judgment to this extent until such judgment had become final, and it never did become final in the form in which the respondent says she relied upon it.

Furthermore, on this record we cannot say that the equities would require relief against such a situation, for the sole witness for the plaintiff testified in the court below that the property was not worth to exceed $25,000. Hence, if there is redemption from the sale, the plaintiff will receive more for the property than it was worth according to her own contentions.

The principal merit of the petition, however, is concerned with the

propriety of the holding that § 6740 of the Compiled Laws of 1913, in so far as it recognizes possession during the redemption period as a legitimate subject of contract between mortgagor and mortgagee at the time of the making of the mortgage, is impliedly repealed by chapter 132 of the Laws of 1919. Our holding in this respect in the original opinion was made with full appreciation of the doctrine that repeals by implication are not favored. On account of the radical change of policy indicated by the 1919 statute and its utter inconsistency with the existence of a right to barter for the possession of the premises mortgaged during the year of redemption as a part of the security for the indebtedness, we were of the opinion that the two statutes could not possibly stand together as an expression of the policy of the state. Further reflection has but served to confirm our views in this respect.

Where a mortgage gives merely a lien by way of security there are strong reasons why the mortgagee is not entitled to possession and consequently not entitled to rents until such right is secured through a completed foreclosure, and the courts frequently refuse to give effect to rent clauses in mortgages which are designed to permit the automatic accrual of rents to the mortgagee upon default. See 45 Harvard L. Rev. 902, 903; 46 Harvard L. Rev. 492. These reasons are all the more cogent where a statute expressly confirms in the mortgagor during the year of redemption the right to the use, benefit, rents and profits of the property. In such case the policy of protecting him against the consequences of his prior inconsistent contract, to the extent of the rights confirmed in the statute, is too evident to be judicially ignored or disregarded. That this policy is gaining rather than losing favor in mortgage law is indicated by § 2, part 1, of the proposed Uniform Real Estate Mortgage Act, which has been approved by the National Conference of Commissioners on Uniform State Laws. In that act it is provided: "The mortgage gives no right to possession or to the rents and profits of the mortgaged premises to the mortgagee or purchaser at the foreclosure sale until it is foreclosed and the period of redemption has expired, even though the mortgage contains a conveyance, or agreement for possession by the mortgagee, or pledge of the rents and profits, or other provision to the contrary." Uniform

178

Real Estate Mortgage Act, § 2 (2). See also Flower v. King, 189 Minn. 461, 250 N. W. 43.

The petition for rehearing is denied.

BURR, NUESSLE and BURKE, JJ., concur.