[Title No. 6336.]

FARGO BUILDING & LOAN ASSOCIATION, a Corporation, Appellant, v. MATHILDA RICE, Putnam Land Company, and Asa Putnam, Respondents.

(262 N. W. 345.)

Opinion filed August 13, 1935. Rehearing denied September 17, 1935.

*Conmy, Young & Conmy,* for appellant.

*D. S. Ritchie* and *Allen W. Wood,* for respondents.

Burke, Ch. J. This is an action to enjoin the defendants from interfering with the mortgagee's right to the possession of the mortgaged property.

It came on for hearing on an order to show cause why a temporary injunction should not issue, and after the hearing the trial judge held that "any contract made between mortgagor and mortgagee, giving the mortgagee . . . the right to collect the rents, is valid . . ." when the period of redemption is not involved. A temporary injunction was ordered. Thereafter, the case was tried on its merits and the trial judge held that "the demands of the plaintiff are unconscionable and inequitable." Judgment was entered vacating the former injunction and dismissing plaintiff's cause of action, from which judgment the plaintiff duly appeals and demands a trial de novo.

On October 2nd, 1925, Mathilda R. Rice executed and delivered, to the Fargo Building and Loan Association, a mortgage, on the North 40 feet of Lot "B", Auditor's Subdivision of Outlot "19" of Eddy and Fuller's Outlots to the City of Fargo, Cass County, North Dakota, to secure the payment of thirty-five hundred dollars, which mortgage was duly recorded. Upon the premises there is, what is called in the record, a triplex apartment house and at the same time, and as a part of the same transaction, the said Mathilda R. Rice executed and delivered to the Building and Loan Association an assignment of the rents of said triplex, as follows:

"For value received, I hereby assign, set over, attorn and deliver to the Fargo Building and Loan Association all my right, title, interest and demand in and to the rents, issues and profits of the Buildings situate on North 40 feet of Lot 'B' of Auditors Subdivision of Outlot '19' of Eddy and Fullers Outlots to the City of Fargo, Cass County, N. Dak. . . .

"And to that end I hereby assign and set over to the Fargo Building and Loan Association the lease of the said premises now made, executed or delivered, and whether written or verbal, or to be hereafter made,

executed and delivered, be the same written or verbal, of the aforesaid premises, and I do hereby empower the said Fargo Building and Loan Association by its officers, agents, or attorney, to collect the said rents as they shall become due and to receipt for same, the same as I might or could do if personally present, and I do hereby direct each and all of the tenants of the aforesaid premises to pay such rents as may now be due or shall hereafter become due to the said Fargo Building and Loan Association its agent, or attorney, and the receipts for the said rents shall in all things be my receipts for same.

"The term of this attornment or assignment shall be until the certain note and mortgage dated October 2nd, 1925, made, executed and delivered by Mathilda R. Rice, single to Fargo Building and Loan Association for the sum of Three Thousand Five Hundred Dollars shall have been fully paid and satisfied.

"I further make, constitute and appoint, during the term of the assignment of rent, as hereinbefore set out, Fargo Building and Loan Association my true and lawful Attorney, for me and in my name, to renew any and all leases of said premises, from time to time, or agree to renew the same and also make such new leases, agreements, and writings in regard to the leasing of said premises as it shall think proper."

This assignment was duly signed by the said Mathilda R. Rice and acknowledged before Lorentz B. Nordby, notary public, and was duly filed for record in the office of the register of deeds on the 26th day of October, A. D., 1925, at 2:57 o'clock P. M. and was duly recorded in book "C–1" of Misc'l on page 149.

On the 8th day of April, 1930, the said Mathilda R. Rice executed and delivered, to said building and loan association, a mortgage on the South 60 feet of Lot "B" Auditor's Subdivision of Outlot 19 of Eddy and Fuller's Outlots to the City of Fargo, to secure the payment of a note of even date for seven thousand dollars and said mortgage was duly recorded. On the south 60 feet of said lot there is, what is called in the record, a fourplex apartment house and at the time of the making and executing of the mortgage and note, and as a part of the same transaction, the said Mathilda R. Rice made an assignment of the rents and leases on the fourplex, identical in all things with the assignment of the rents on the north 40 feet of said lot, except that in the assignment

of the rents on the fourplex there is this additional provision, namely:

"It is understood and agreed that this Assignment of Rents shall not become operative and effective unless default shall be made in the covenants, terms and conditions of the note and mortgage hereinbefore described."

On the 24th day of October, 1925, Mathilda R. Rice executed and delivered to Fred J. Krogh a mortgage on the north 40 feet of said Lot B to secure the payment of $1500.00, upon which there was due and unpaid on October 6, 1932, the sum of $1,707.57 and an action was pending at said date for a foreclosure of said mortgage.

On June 1st, 1932, the mortgagor, Mathilda R. Rice, was more than a year in arrears on payment of interest, the taxes, from and after 1929, had not been paid, three of the apartments were vacant and tenants occupying apartments were behind in the payment of rent. The apartments were in a run down condition, roofs were leaking and the entire interior of both apartment houses needed redecorating. While in such condition, on June 1st, 1932, the mortgagee took possession and began collecting the rent. In the basement some partitions were removed and lockers were installed. The interior of both apartments was redecorated and necessary improvements and repairs, in the judgment of the mortgagees, were made.

Mathilda R. Rice testified that she did not know she signed an assignment of the rents and profits of the building; but she did sign and acknowledge both assignments before a notary public and there is no claim of fraud, or that she did not have an opportunity of reading, or that she was prevented in any way, or that she could not read. She did not live in either apartment. She was apparently a business woman and this property was an investment. The building and loan association required an assignment of the rents with every mortgage and she could not get the loan without an assignment of rent.

In the case of Rokusek v. National Union F. Ins. Co. 50 N. D. 123, at page 135, 195 N. W. 300, the court said: "There is no question but that the plaintiff, while having a somewhat faulty knowledge of English, was nevertheless sufficiently informed so as to be able to read both of the exhibits in question had he so desired. No artifice was resorted to to prevent him from so doing. . . . There is no evidence to indi-

cate that, if the plaintiff did not read the exhibits in question, he was in any way prevented from doing so had he the inclination. That being the case, we must hold, and we believe it is elementary law, that the plaintiff having through his own fault failed to read the instruments in question is bound thereby unless he can establish he was induced to sign the same by means of fraud and misrepresentation on the part of the defendant. Little v. Little, 2 N. D. 175, 49 N. W. 736; 6 R. C. L. 43; 13 C. J. 370."

The assignment does not mention the possession but it empowers the mortgagee, by its officers, agents or attorney, to collect the rents as they become due and to receipt for the same. It assigns to the mortgagee all leases, whether written or oral, on the premises. It appoints the mortgagee attorney to renew any and all leases from time to time and to collect the rents and profits until the debt is paid. These provisions in the assignment clearly imply the right to possession, as the things which the mortgagee is authorized to do could not be done without possession.

In answer to questions by her attorney Mathilda R. Rice testified:

"Q. And what was your attitude at that time towards Mr. Williams collecting the rents?

"A. Well, I thought I was in arrear, and I didn't know as I could help myself. I didn't know how much right I had to collect the rents myself when I was in arrears. . . .

"Q. Did you know at that time that he was collecting under the assignment of rent?

"A. No, I didn't know it then. I thought it was because I was in arrear.

"Q. And you would allow him to do so until you caught up, is that the idea?

"A. Yes, and he told me it would only be a year or so, and then I'd be caught up, and he would turn it over to me. . . .

"Q. Did you at any time make objection to Mr. Williams about the expenditure of money upon those buildings?

"A. I did when he commenced to tear the house over to remodel, and paint, and do things that really wasn't necessary.

"Q. And what did he say to you?

"A. Well, he said it had to be done, because the tenants wanted it. That was the main thing. . . . He told me to stay away, that two people couldn't run any business. . . . He didn't want me to come over there. . . . I thought, of course, he'd have to collect the rents until I was in good standing."

On page 58 of the transcript she is asked by the court:

"Mrs. Rice, did you say you objected, or did not object, to the collection of the rent.

"A. No, I didn't object, because I didn't know how much right I had, because I was in default."

It is clear from this testimony that the only objection that Mathilda R. Rice made was to repairs that she thought unnecessary. She did not object to the possession in the building and loan association. She was willing for him to collect the rents and apply them on the payment of her indebtedness, as she was in arrears.

In the case of Nash v. Northwest Land Co. 15 N. D. at page 573, 108 N. W. 792, this court held that the evidence in that case clearly showed implied consent. In the case of Cameron v. Ah Quong, 175 Cal. 377, at page 384, 165 P. 961, it is held that consent of the mortgagor may be shown by circumstances as well as by direct evidence of formal and declared acquiescence. See Howland v. Bailey, 55 N. D. 125, 212 N. W. 770.

In this case there is the written agreement and the statement of the mortgagor that, after mortgagee took possession, she agreed it might go on and collect the rents until she caught up and was in good standing. She made no objection to the mortgagee's possession and with full knowledge thereof acquiesced therein.

Paragraph 9 of defendant's answer alleges: "That the assignments of rents specified and relied on by the plaintiff are invalid and void, as being against the public policy, as established by the legislature of North Dakota, and as being an interference with the mortgagor's equity of redemption."

On the 18th day of September, 1933 Mathilda R. Rice, by warranty deed, conveyed to Asa Putnam one building 48x46 feet, 8 rooms up and 8 rooms down, basement under all of house, in Block B, Lot 19, Eddy and Fuller's Addition, also a garage, 40x10 feet; and on the 23rd

of September, 1933, she conveyed to Asa Putnam one dwelling house composed of 13 rooms, situated in Block B of Lot 19. At the time of this conveyance the mortgagee had been in possession of the premises for more than a year collecting the rents and applying them on Mathilda R. Rice's past due indebtedness, paying taxes to prevent tax deeds and for necessary repairs. Putnam testified that he knew about the mortgages on the land. He did not make any inquiry of the Fargo Building and Loan Association.

"Q. Did you examine the interior of the premises?

"A. I just drove by. They wouldn't let me in.

"Q. You traded without an examination of the premises, the interior of them?

"A. I drove by and seen the outside.

"Q. But you did not see inside?

"A. No, I did not. I couldn't get in.

"Q. Did you make any request of the Building and Loan Association to be permitted to view the inside of the premises?

"A. No, I did not.

"Q. You made no inquiry as to the amount due on the property?

"A. Not with the Fargo Building and Loan."

The mortgagee was in possession and its possession was notice to Mr. Putnam of the equities of the Building and Loan Association.

At the time of the trial there was due on the thirty-five hundred dollar mortgage, thirty-three hundred dollars besides taxes, on the seven thousand dollar mortgage, seventy-four hundred dollars besides taxes and on the fifteen hundred dollar mortgage there was $1707.57. The only evidence of the value of the property is the testimony of Mr. Williams, who testified that its value was $11,500, so that the mortgages against the property are more than its actual value.

It is the contention of the respondent that the assignment of the rents and profits is void as against the public policy; that under § 7762 of the 1925 Supplement to the Compiled Laws of 1913, Chapter 132 of the Laws of 1919, "The debtor under an execution or foreclosure sale of his property shall be entitled to the possession, rents, use and benefit of the property sold from the date of such sale until the expiration of the period of redemption."

We had this section before us in the case of Smith v. Grilk, 64 N. D. 163, 250 N. W. 787. In this case the court said, syllabus, ¶ 6: "It is held that that portion of § 6740, Compiled Laws of 1913, which recognizes the right of the mortgagor and mortgagee to contract regarding possession at the time of the execution of the mortgage and which was consistent with the earlier statutes giving to the purchaser at foreclosure sale the right to the rents and profits during the year of redemption, is wholly inconsistent with the policy of the later statute and is by implication repealed by chapter 132, Laws of 1919 (1925 Supp. 7762)." This decision is in harmony with the rule as laid down in 59 C. J. 916, § 517, "Where there is sufficient repugnancy or inconsistency between two statutes, or parts of two statutes, to effect a repeal by implication, the earlier statute is impliedly repealed to, and only to, the extent of the conflict, repugnancy, or inconsistency." The extent in the Smith v. Grilk Case was to the period of redemption only and as to that period § 7762 was held to apply.

Chapter 132, Session Laws of 1919, entitled "An Act to Amend and Re-enact § 7762 of the Compiled Laws of North Dakota for the Year 1913, Relating to the Rent, Use and Benefit of Property Sold Under Execution or Foreclosure Sale." Before the amendment this section gave the purchaser from the time of the sale until a redemption and a redemptioner from the time of his redemption until another redemption, the right to receive from the tenant in possession the rents of the property sold, or the value of the use and occupancy thereof. It applied exclusively to the period of redemption and gave to the purchaser the right to the rents and profits, or the value of the use and occupancy of the mortgaged property during the redemption period.

On November 2, 1918, an opinion was filed in this court in the case of Geo. B. Clifford & Co. v. Henry, 40 N. D. 604, 169 N. W. 508, construing § 7762 and holding "that the purchaser, from the time of sale until redemption, is entitled to receive from 'the tenant in possession the rents and profits from property sold, or the value of the use and occupation thereof,' . . ." All that was involved in that case was the rents and profits, or the value of the use and occupancy of the land during the year of redemption. The legislature at the next session, and within four months after the filing of this decision, enacted chapter

132, amending the law so as to give to the mortgagor the possession, rents, use and benefit of the property sold from the date of such sale until the expiration of the period of redemption. That is all that it does do. It does not relate to any time excepting the period of redemption and while "repugnancy may affect an implied repeal only pro tanto to the extent of the repugnancy . . . the courts will not enlarge the meaning of one act in order to hold that it repeals another by implication, nor will they adopt an interpretation leading to an adjudication of repeal by implication unless it is inevitable, and a very clear and definite reason therefor can be assigned." 59 C. J. 904 to 908.

The court in the case of Smith v. Grilk, supra, went as far as it could in holding that the mortgagor's assignment of rents and profits, during the year for redemption, was inconsistent with the policy of chapter 132, Session Laws 1919 (1925 Supp. § 7762), and that portion of the statute was repealed by implication. Under this decision the mortgagor and the mortgagee may make any contract that they could have made prior to the amendment, except that, at the time of the execution of the mortgage, and as a part of the same transaction, they cannot, by contract, deprive the mortgagor of his statutory right to the rents and profits or the use and occupation of the mortgaged property during the year of redemption. In this case there has been no foreclosure. The period of redemption is not involved, and therefore, chapter 132 of the Session Laws of 1919 (1925 Supp. § 7762) is not involved.

Our statute § 6740, Compiled Laws 1913, was taken from California. It is quoted in the case of Spect v. Spect, 88 Cal. 437, 26 P. 203, 13 L.R.A. 137, 22 Am. St. Rep. 314, as follows: "Section 2927 of the Civil Code declares that 'a mortgage does not entitle the mortgagee to the possession of the property, unless authorized by the express terms of the mortgage, but after the execution of the mortgage the mortgagor may agree to such change of possession without a new consideration.'" The court said: "The right of the mortgagee to take possession of the mortgaged premises does not depend upon the statute. The mortgagor could at all times, even by a parol agreement, give to his mortgagee this additional security. Fogarty v. Sawyer, 17 Cal. 589; Edwards v. Wray (C. C.) 11 Biss. 251, 12 F. 42. In taking such possession the mortgagee does not thereby acquire any estate in the land, or obtain for his

mortgage any higher character or any different or greater protection than it would otherwise have possessed. In any action to enforce the mortgage, or to collect the debt for which it was given as security, the mortgagee has no additional rights by reason of the fact that he is in possession of the mortgaged premises with the consent of the mortgagor. Such possession does, however, give him rights in addition to those conferred by the mortgage. It is an additional security for the debt, which he is entitled to retain in accordance with the terms under which it was received. This right to retain the possession of the land is not coincident with a right to foreclose his mortgage, or dependent upon such right, but depends solely upon the existence of the debt. The possession of the land is a special security for the debt, distinct and separate from the mortgage, which has been conferred by an act of the debtor, and the right to retain the same is independent of and distinct from any right springing from the mortgage. A mortgage is defined by § 2920 of the Civil Code (Comp. Laws 1913, § 6725), to be a 'contract by which specific property is hypothecated for the performance of an act, without the necessity of a change of possession.' ‘The use of the term 'hypothecate' signifies that possession is not an incident of the mortgage, and that the fact of possession is entirely distinct from the contract of hypothecation. When, therefore, in addition to the contract of hypothecation, the debtor gives to his creditor the possession of the mortgaged premises, he thereby, in addition to the mortgage which he has executed, pledges to him the land also as security for the debt, and confers upon him such rights as are incident to a pledge. . . . The holding of the land in pledge is like the holding of any other pledge. Until the debt is repaid the owner of the pledge cannot recover it from the creditor. The holder of personal property given as security for a debt is entitled to retain the same from the owner until the debt is satisfied, even though the statute of limitations has barred all right of action to recover the debt. Jones v. Merchants' Bank, 4 Robt. (N. Y.) 221. Under the same principle the mortgagee in possession is entitled to retain such possession until the debt is paid." Hooper v. Young, 140 Cal. 274, 74 P. 140, 98 Am. St. Rep. 56; Cory v. Santa Ynez Land & Improv. Co. 151 Cal. 778, 91 P. 647; Burns v. Hiatt, 149 Cal. 617, 87 P. 196; 117 Am. St. Rep. 157; Green v. Thornton, 8 Cal. App. 160,

96 P. 382; Cameron v. Ah Quong, 175 Cal. 377, 165 P. 961; Lapique v. Walsh, 50 Cal. App. 82, 195 P. 296.

In the case of Foster v. Coyle, 59 Mont. 444, 197 P. 747, the court quotes § 5737, Montana Code, which is identical with § 6740, Compiled Laws 1913, and the court continues as follows: "Section 5737 expressly recognizes that such an agreement may be made independently of the mortgage. When the mortgagee is in possession by the consent of the mortgagor, he is lawfully in possession and can maintain such possession against the mortgagor or any other person who cannot show title paramount to that of the mortgagor. Fee v. Swingly, 6 Mont. 596, 13 P. 375; Jones, Mortg. §§ 702, 703; 19 R. C. L. 326."

In the case of Ortengren v. Rice, 104 Ill. App. 428, the Illinois court said: "One of the objects for which courts are constituted is to enforce lawful contracts. In the case at bar the rents, issues and profits of the real estate, as well as the real estate itself, were pledged as security for the indebtedness. Such a contract may be lawfully entered into, and, when fairly executed, the courts will, upon a proper occasion, enforce it, even though it be admitted that the premises are adequate security for the debt and that the mortgagor is solvent." Union Cent. L. Ins. Co. v. Jensen, 74 Mont. 70, 237 P. 518.

Respondent contends that the assignment of rents and profits is void for the reason that such assignment provides that the mortgagee shall have the right to collect the rents and profits until the mortgage debt shall have been fully paid, which period might include the redemption period as provided by law. Under § 6740, Compiled Laws 1913, it was legal for the mortgagor to assign to the mortgagee the rents and profits of the mortgaged property, accruing before foreclosure sale; to be applied on the mortgage debt and while the assignment does provide for the collection of the rents and profits until the mortgage debt is paid there is no provision in the contract or assignment which includes the period of redemption in case of a foreclosure and it must be presumed that in making their contract it was the intention of the parties to make a legal contract, such as they had a right to make and which could include the collection of the rents and profits and their application upon the indebtedness *before* foreclosure sale. The contract during such pe-

riod was perfectly legal and that being all that is involved in this case there is no merit in the contention.

"Mortgage may give mortgagee right to possession on happening of contingency, and possession, having been obtained, may be held until the debt is paid." United States Bldg. & L. Asso. v. Stevens, 93 Mont. 11, 17 P. (2d) 62; Wells-Dickey Co. v. Embody, 82 Mont. 150, 266 P. 869.

In Blessett v. Turcotte, 23 N. D. 417, 136 N. W.. 945, the court said: "Mortgagee who, after condition broken, but before foreclosure, enters upon the mortgaged premises and takes possession thereof, will be presumed to do so for the purpose of collecting the rents and profits, and applying them upon the mortgage debt." See Finlayson v. Peterson, 11 N. D. 45, 89 N. W. 855.

On the rights of the mortgagee in possession, see notes in 4 A.L.R. 1427; 55 A.L.R. 1031; 87 A.L.R. 642; 88 A.L.R. 1352. It is the unquestioned right of the mortgagee lawfully in possession to retain it until he has received full satisfaction for his mortgage debt. 41 C. J. 613, § 581; 2 Jones, Mortg. 8th ed. § 887.

The plaintiff is a mortgagee rightfully in possession of the mortgaged property with the consent of the mortgagor. It has taken over the management and control of the estate, the leasing of the premises, the collection of the rents and profits, the making of repairs and the payment of taxes. This was acquiesced in by the mortgagor and it follows that the judgment should be reversed, vacated and set aside and the temporary injunction should be made permanent.

It is so ordered.

Burr, Nuessle, Morris and Christianson, JJ., concur.