2011 ND 7

**INVESTORS TITLE INSURANCE COMPANY, Plaintiff**

v.

**David F. HERZIG, Southeastern Shelter Corporation, and Sheldon Smith, Personal Representative of the Estate of Alphild Herzig, substituted for Alphild Herzig, Deceased, Defendants.**

**On Appeal Southeastern Shelter Corporation, Plaintiff and Appellant**

v.

**David F. Herzig; and Sheldon Smith, in his capacity as Personal Representative of the Estate of Alphild Herzig, substituted for Alphild Herzig, Deceased, Defendants and Appellees.**

No. 20100108.

Supreme Court of North Dakota.

Jan. 12, 2011.

Robert S. Rau, Minot, N.D., for plaintiff and appellant.

Arnold V. Fleck (argued), Bismarck, N.D., for defendant and appellee Sheldon Smith.

Daniel Harry Oster (appeared), Bismarck, N.D., for defendant and appellee David F. Herzig.

MARING, Justice.

[¶ 1] Southeastern Shelter Corporation ("Southeastern") appeals from an order declaring that a 1989 North Carolina judgment against David F. Herzig which Southeastern had attempted to collect from Herzig is no longer enforceable. We conclude that the district court had jurisdiction to rule on Herzig's motion and that the court did not err in concluding the judgment is unenforceable. We affirm.

I

[¶ 2] In 1989, Southeastern recovered a judgment against Herzig for $149,598.13 in a North Carolina court. The North Carolina judgment was transcribed and filed in North Dakota under the Uniform Enforcement of Foreign Judgments Act, N.D.C.C. ch. 28–20.1, in August 1998. The judgment was renewed in North Carolina on January 11, 2000, and was again transcribed and filed in North Dakota for enforcement purposes. Southeastern's efforts since 1998 to enforce the North Carolina judgment in North Dakota have resulted in a "long-running, tortured and unduly complicated saga" of litigation. *Investors Title Ins. Co. v. Herzig*, 2010 ND 138, ¶ 3, 785 N.W.2d 863 ("*Herzig I* "); *see also Investors Title Ins. Co. v. Herzig*, 2010 ND 169, 788 N.W.2d 312 ("*Herzig II* ").

[¶ 3] *Herzig I* involved a consolidated appeal by the personal representative of Alphild Herzig's estate and a cross-appeal by Southeastern stemming from Southeastern's motion for a debtor's examination in aid of execution under N.D.C.C. ch. 28–

25, and Southeastern's efforts to collect money allegedly owed under 2006 contempt orders. 2010 ND 138, ¶¶ 1, 5, 17, 785 N.W.2d 863. Alphild Herzig, David Herzig's mother, had been named as a party in the proceedings and contempt orders had been entered against her for allegedly failing to produce documents in response to requests for production of documents. *Id.* at ¶ 37. Among other things, we affirmed orders substituting the personal representative of Alphild Herzig's estate for Alphild Herzig after her death and remanded to the district court "to determine the amount of remedial sanction necessary to compensate Southeastern under the court's 2006 contempt orders." *Id.* at ¶ 79. *Herzig II* involved Southeastern's appeal from an order entered in other post-judgment proceedings to enforce the 1989 North Carolina judgment. 2010 ND 169, ¶¶ 1, 2, 788 N.W.2d 312. We affirmed the district court's order denying Southeastern's motion to " 'Attach Res and Property in Trust for Benefit of Judgment Creditor,' " granting the application of the personal representative of Alphild Herzig's estate to cancel a lis pendens filed by Southeastern, and refusing to grant "Southeastern's motions for an order to prohibit the sale and transfer of property and to compel the production of documents by subpoena." *Id.* at ¶¶ 1, 46.

[¶ 4] On January 13, 2010, while the appeals in *Herzig I* and *Herzig II* were still pending in this Court, Herzig filed a motion in district court to "Purge Judgment." Herzig argued the North Carolina judgment expired on January 11, 2010, and requested the court to declare the North Carolina judgment "unenforceable and no longer valid due to the passage of time." The personal representative of Alphild Herzig's estate joined in the motion. Southeastern responded and asserted the district court had been divested of jurisdic-

tion to rule on the motion because *Herzig I* and *Herzig II* were pending on appeal in this Court. On the merits, Southeastern argued that the actions of Herzig and the personal representative effectively "toll[ed] the statu[te] bar date from running." On March 11, 2010, the district court granted Herzig and the personal representative's motion. The court concluded that it retained jurisdiction to consider the motion, that the judgment expired on January 10, 2010, and that the statutory limitation period for enforcing a judgment was not tolled under the circumstances.

## II

[¶ 5] Southeastern argues the district court lacked jurisdiction to rule on the January 2010 motion because *Herzig I* and *Herzig II* were pending on appeal in this Court.

[¶ 6] Generally, a district court loses jurisdiction when a notice of appeal is filed. *See, e.g., Siewert v. Siewert,* 2008 ND 221, ¶ 30, 758 N.W.2d 691; *Peters–Riemers v. Riemers,* 2003 ND 96, ¶ 16, 663 N.W.2d 657; *Wilson v. Koppy,* 2002 ND 179, ¶ 6, 653 N.W.2d 68. There are exceptions to this rule. "It is well settled in this State that an appeal does not operate to stay proceedings for the enforcement of a judgment." *Verry v. Murphy,* 163 N.W.2d 721, 725 (N.D.1968). The "enforcement of an order or judgment pending an appeal is 'an independent collateral proceeding,' and the appellate proceeding proper remains unaffected thereby." *Bonde v. Stern,* 72 N.D. 476, 483, 8 N.W.2d 457, 461 (1943) (internal citation omitted). This Court has noted, "[i]t is of course true that where a supersedeas bond is not furnished the judgment may properly be enforced pending the appeal; but it is equally true that if the judgment be reversed the appellant would be entitled to recover back whatever he had lost by reason of the interim en-

forcement of the erroneous judgment." *Smith v. Grilk,* 64 N.D. 163, 176, 250 N.W. 787, 793 (1933) (On Petition for Rehearing), *overruled on other grounds, Skinner v. American State Bank,* 189 N.W.2d 665 (N.D.1971). We have recognized that "post-judgment proceedings have been treated as separate litigations from the action which produced the underlying judgment," *Herzig I,* 2010 ND 138, ¶ 30, 785 N.W.2d 863, and that "a judgment creditor may engage in multiple separate proceedings in collecting a judgment." *Herzig II,* 2010 ND 169, ¶ 32, 788 N.W.2d 312.

[¶ 7] Courts have defined a "collateral matter" for which a lower court retains jurisdiction to act after a notice of appeal has been filed as a matter that "lies outside the issues in an appeal or arises subsequent to the judgment from which an appeal was taken." *In re Marriage of Brackett,* 309 Ill.App.3d 329, 242 Ill.Dec. 798, 722 N.E.2d 287, 293 (1999); *see also Matter of Denaro's Estate,* 112 Ill.App.3d 872, 68 Ill.Dec. 455, 445 N.E.2d 1308, 1312 (1983) ("Collateral or supplemental matters include those lying outside the issues in the appeal or arising subsequent to delivery of the judgment appealed from.") A proceeding on a matter collateral to the appeal may have a "potential effect on the appeal, if the proceeding could or would have occurred regardless of the outcome of the appeal," and may even "render the appeal moot." *Varian Med. Sys., Inc. v. Delfino,* 35 Cal.4th 180, 25 Cal.Rptr.3d 298, 106 P.3d 958, 965 (2005). In *TSA Int'l Ltd. v. Shimizu Corp.,* 92 Hawai'i 243, 990 P.2d 713, 736 (1999), the court held that a circuit court retained jurisdiction during the pendency of an appeal to expunge a lis pendens because the action "was an exercise of the circuit court's power to enforce its judgment." *See also Delfino,* 25 Cal. Rptr.3d 298, 106 P.3d at 965 ("a proceed-

ing to expunge a lis pendens is collateral to an appeal from the judgment in the underlying action"); *Herzig II,* at ¶ 33 (a district court is not divested of jurisdiction to cancel a lis pendens while related appeal was pending "where the lis pendens was filed post-judgment and during proceedings supplementary to the execution of the judgment"). These cases are instructive in analyzing the district court's jurisdiction to act on the motion to "Purge Judgment."

■ [¶ 8] In this case, *Herzig I, Herzig II,* and Herzig's motion to "Purge Judgment" were all interrelated but separate proceedings concerning Southeastern's attempt to enforce the North Carolina judgment registered under the Uniform Enforcement of Foreign Judgments Act., N.D.C.C. ch. 28–20.1. The issue raised in Herzig's motion to "Purge Judgment" fell outside the issues raised in either *Herzig I* or *Herzig II. Herzig I* concerned orders granting substitution and a continuing contempt order to sanction Alphild Herzig and her estate for failure to comply with discovery requests. *Herzig II* concerned cancellation of a lis pendens and other methods used by Southeastern to enforce the North Carolina judgment. Herzig and the personal representative's motion to declare the underlying foreign judgment unenforceable because it expired during the pendency of the appeals in *Herzig I* and *Herzig II* relates to a defense to Southeastern's efforts to enforce the judgment which arose after those appeals were filed. Enforceability of the underlying foreign judgment was not at issue in either *Herzig I* or *Herzig II.* Although the district court's ruling on the enforceability of the underlying foreign judgment did not affect this Court's ultimate decision in *Herzig I,* the ruling did potentially moot the issues decided by this Court in *Herzig II.* However, the dis-

trict court's rulings in *Herzig II,* which we affirmed on appeal, were entirely consistent with its ruling on the motion to "Purge Judgment." Under these circumstances, we conclude the district court retained jurisdiction to rule on the continued enforceability of the North Carolina judgment during the pendency of the other appeals.

III

■ [¶ 9] Southeastern argues the district court erred in ruling the 1989 North Carolina judgment is no longer enforceable in North Dakota.

[¶ 10] Southeastern does not challenge the district court's conclusion that, under both North Carolina and North Dakota law, the underlying North Carolina judgment "was to expire on January 10, 2010." Rather, Southeastern argues that the time period for enforcing the judgment under N.D.C.C. § 28–20–35 should be tolled for a "reasonable amount of time" because of Herzig and the personal representative's actions and the pendency of the appeals in *Herzig I* and *Herzig II.*

[¶ 11] Section 28–20–35, N.D.C.C., provides for the cancellation of judgments after certain periods of time have elapsed:

> After ten years after the entry of a judgment that has not been renewed, or after twenty years after the entry of a judgment that has been renewed, the judgment must be canceled of record.

After the time periods set forth in the statute governing cancellation of judgments have passed, a judgment is unenforceable against the judgment debtor. *See Jahner v. Jacob,* 515 N.W.2d 183, 186 (N.D.1994).

[¶ 12] We have reviewed the cases Southeastern relies upon and none of them support its tolling argument under these circumstances. For example, this Court in

*Union Nat. Bank v. Ryan*, 23 N.D. 482, 137 N.W. 449 Syl. 1 (1912), held that under the predecessor statute to N.D.C.C. § 28–01–32, the absence of a judgment debtor from the state tolls the statute of limitations "and the judgment, though dormant, so far as it relates to liens and for the purposes of execution, is not dead, and will support an action against the judgment debtor after ten years have elapsed." Section 28–01–32, N.D.C.C., provides in part:

> If any person is out of this state at the time a claim for relief accrues against that person, an action on such claim for relief may be commenced in this state at any time within the term limited in this chapter for the bringing of an action on such claim for relief after the return of such person into this state. If any person departs from and resides out of this state and remains continuously absent therefrom for the space of one year or more after a claim for relief has accrued against that person, the time of that person's absence may not be taken as any part of the time limited for the commencement of an action on such claim for relief.

Southeastern does not claim that Herzig has been absent from North Dakota.

[¶ 13] Southeastern relies upon *MDU Resources Group v. W.R. Grace and Co.*, 14 F.3d 1274, 1277–78 (8th Cir.1994), for the proposition that a claim for relief does not accrue until an aggrieved party discovers the facts which constitute the basis for the claim for relief, and upon N.D.C.C. § 28–01–24, which extends the period of time an action may be brought based on fraudulent concealment. None of the actions of Herzig and the personal representative in these proceedings can be equated with fraudulent concealment of facts which constitute the basis for a claim for relief. Southeastern contends the law of the case doctrine, *see Riverwood Commercial Park,*

*L.L.C. v. Standard Oil Co., Inc.*, 2007 ND 36, ¶ 12, 729 N.W.2d 101, somehow supports its tolling argument. The law of the case doctrine has no application here where the event which triggered the district court's decision occurred while the appeals were pending. Southeastern relies upon *Estate of Sorenson*, 2006 ND 145, ¶ 12, 717 N.W.2d 535, for the proposition that a binding promise to extend the statute of limitations may toll the statute of limitations, upon *Windschitl v. Windschitl,* 579 N.W.2d 499, 501 (Minn.Ct.App.1998), for the proposition that the acknowledgment of a debt tolls the statute of limitations, and upon *Estate of Hedstrom*, 472 N.W.2d 454, 456 (N.D.1991), for the proposition that oral stipulations of the parties made in open court on the record are binding. Southeastern points to nothing in the record on the part of Herzig and the personal representative that can reasonably be construed as a promise to extend the time period, an acknowledgment of the debt, or a binding stipulation between the parties. The court in *First Nat. Bank v. Fryman*, 236 Ill.App.3d 754, 176 Ill.Dec. 930, 602 N.E.2d 876, 879 (1992), also relied upon by Southeastern, extended the life of a lien, but the court relied on a statute providing, "when a party in whose favor judgment was rendered is restrained by an order of court from enforcement of that judgment, the time that party is restrained is not considered as any part of the time measured" under the limitation statute. *See also Holmes v. Fanyo*, 326 Ill.App. 624, 63 N.E.2d 249, 251–52 (1945) (same); *Work v. Harper*, 31 Miss. 107, 1856 WL 2584 *2 (1856) (injunction restraining judgment creditor from enforcing judgment tolls statute of limitations). Even if North Dakota had a comparable statute, the record on appeal contains no court order that actually restrained Southeastern from enforcing the judgment.

[¶ 14] Our research reveals that there are very few circumstances that toll the running of the period for enforcement of a judgment. *See* Annot., *Suspension, or removal of bar, of Statute of Limitations as against judgment,* 21 A.L.R. 1038 (1922). It appears that some courts have held that an appeal from a judgment where a supersedeas bond has been filed tolls the running of the statute of limitations against the judgment during the pendency of the appellate proceedings. *Id.* at 1054. Other jurisdictions hold that in the absence of specific statutory provisions giving it that effect, an appeal accompanied by a supersedeas bond does not suspend the statute of limitations against a judgment. *Id.* at 1057. For example, in *Christy v. Flanagan,* 87 Mo. 670, 1885 WL 8009 *1 (1885), the court addressed whether an appeal taken from a judgment, accompanied by a supersedeas bond, had the effect of extending the judgment lien beyond the time prescribed by statute:

It is true as contended that it is not shown by the report of the case whether any bond or order operating as a *supersedeas* had been given or made, or anything to show that the plaintiff in the judgment could not have enforced his judgment by execution during the pendency of the writ; but this can make no difference inasmuch as the decision of the court was distinctly put upon the words of the statute. A judgment lien is of statutory origin, the lifetime of which is fixed by statute, which we are not at liberty either to diminish or extend, by construing into the statute an exception which it is alone the province of the legislature to insert. It is argued that inasmuch as an appeal where a bond is given operates as a *supersedeas,* and denies to the judgment creditor an execution to enforce the lien of his judgment, it would be a hardship on him to rule that the appeal, if not determined

within the period fixed by law for the continuance of the judgment lien, did not operate to continue his lien. This argument would be more properly addressed to the law-making power than to us.

*See also Sublette v. St. Louis, Iron Mountain & S. Ry. Co.,* 81 Mo.App. 327, 1899 WL 2043 *2 (1899) (rejecting argument that time for enforcing judgment should be tolled during pendency of defendant's appeal where plaintiff was deprived of right to execute on judgment by defendant's filing supersedeas bond because "[o]ur statute ... has provided no such exemption from the ... limitation, and we must of course enforce the law just as it is written").

[¶ 15] In ascertaining the intent of the legislature, we first look at the plain language of a statute, giving each word its ordinary and commonly understood meaning. *See, e.g., State v. Brown,* 2009 ND 150, ¶ 15, 771 N.W.2d 267. Under N.D.C.C. § 28–20–35, after the time periods set forth in the statute have passed, the judgment "must" be cancelled of record. In *Interest of D.S.,* 263 N.W.2d 114, 119 (N.D.1978), this Court said:

The ordinary meaning of the word "must" is to impose a duty or grant a right which is *mandatory* or *imperative.* The word "must" cannot be construed to impose or grant a merely directory or nonmandatory duty or right unless the context within which it is used clearly indicates that such was the intent of the Legislature.

[¶ 16] The legislature's use of the term "must" indicates a requirement that a judgment be cancelled after passage of the relevant time period. This Court's case-law demonstrates that attempts to collect on a judgment must be completed within the statutory life of the judgment. In *Berg v. Torgerson,* 100 N.W.2d 153, 156

(N.D.1959), this Court addressed whether an "execution issued upon the judgment and the levy made thereunder on September 26, 1957, twelve days before the lien of the judgment would ordinarily expire, operate to keep the lien in force on October 31, 1957, the date advertised for the sale, which was twenty-three days after the lien would have terminated?" The Court answered the question in the negative:

The basic legal principle involved in this issue has been settled in this state. The identical question was raised in *Depositor[s'] Holding Company v. Winschel*, 60 N.D. 71, 232 N.W. 599 [1930]. There this court held that the issuance of an execution and a levy thereunder, during the statutory period of ten years, did not operate to continue the lien of the judgment beyond the statutory period and that where a judgment creditor seeks to satisfy an execution issued thereon by levy and sale of property the sale must be completed within the period of statutory limitation. *See also Merchants' National Bank v. Braithwaite*, 7 N.D. 358, 75 N.W. 244 [1898]. It follows that the lien of the judgment in this case had expired prior to the date advertised for the sale of the land levied upon and that any proceedings to en-

force the lien after it expired were a nullity.

*Id.* at 155–56.

[¶ 17] There is no dispute that the North Carolina judgment expired on January 10, 2010. Southeastern has not drawn our attention to any statute that allows tolling of the limitation period in N.D.C.C. § 28–20–35 under the circumstances present here. We conclude the district court correctly ruled the underlying 1989 North Carolina judgment is no longer enforceable in North Dakota.

### IV

[¶ 18] We have considered the other issues raised by Southeastern and conclude they are without merit or do not affect our decision. The order is affirmed.

[¶ 19] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.