POWERS  v.  MALAVAZOS  ET  AL.

*Adverse possession—Color of title by deed from grantor with-
out legal title—Adverse possession of entire tract secured
by actual possession of part—Actual possession necessary,
where person without color of title, when—Possession of
tenant is possession of landlord—Title by continuous ad-
verse possession by successive occupants in privity—Ad-
verse possession may be made or continued for landlord
by tenant.*

1. Deed purporting to grant land to which the grantor had
   no legal title *held* to give the grantee "color of title" for
   purpose of securing adverse possession of entire tract by
   actual possession of part of tract purported to have been
   granted.
2. One not having color of title to real estate may acquire
   title by adverse possession, only to that part of the real
   estate of which he was in actual possession.
3. Where a person has color of title to a tract of real estate,
   actual possession of a portion of the tract is, for the pur-
   pose of adverse possession, constructively extended to the
   entire tract unless the other party shows an adverse
   possession in him.
4. Ordinarily the possession of a tenant is possession of his
   landlord.
5. Where for 21 years there is a continuous and successive
   adverse possession of successive occupants of land be-
   tween whom there is a privity, such possession will ripen
   into title.
6. Adverse possession may be made or continued by a land-
   lord or by his tenant for him.

(Decided June 29, 1927.)

APPEAL:  Court of Appeals for Scioto county.

*Mr. W. J. Meyer,* and *Mr. Geo. M. Osborn,* for
plaintiff.

*Mr. A. H. Bannon,* and *Mr. E. G. Millar,* for defendants.

MIDDLETON, J.   This is an action to quiet title to a tract of real estate 33 feet by 16½ feet on Vine alley in the city of Portsmouth.  The disputed tract is at the rear of a lot, admittedly owned by the plaintiff, abutting on Chillicothe street, and is likewise at the rear of a lot, admittedly owned by the defendants, abutting on Fifth street in said city.  The plaintiff claims title both by the record and by adverse possession.

The plaintiff's title is derived from Samuel Heldrith, to whom the tract was deeded by William Oldfield June 18, 1828.  It was described as a tract four poles in width and running west from Chillicothe street ten poles.  As Chillicothe street was then platted and dedicated to the public use, the ten poles measured from the street did not cover the tract in dispute, and Heldrith acquired by that deed no legal title to the disputed strip.  Within a few months after the deed was made to Heldrith, Chillicothe street was widened one pole, thereby placing the lot line of Heldrith's tract one pole west of the point to which it ran when Heldrith secured his deed; in other words, one pole in width along the front of the Heldrith line became part of Chillicothe street.  After Chillicothe street had been thus widened, Heldrith and his successive grantees of the land now owned by the plaintiff employed the same description in their several conveyances that had been used when Oldfield deeded to Heldrith; that is to say, for instance, when Varner in 1864 conveyed the land now owned by the plaintiff to the plaintiff's father, Cyrus

Powers, it was described as two poles fronting on Chillicothe street by ten poles deep. This description covers the tract in question, because when the deed was made in 1864, and when all of the preceding deeds after Oldfield's deed to Heldrith were made, ten poles covered the entire tract lying between Chillicothe street as it then was and Vine alley in the rear of the lot.

Having already expressed the opinion that Heldrith did not acquire title to the strip in question, because the ten poles mentioned in his deed ran up to and did not include this strip, it of course follows that the deeds made by him and his grantees conveyed no legal title to the strip in question. While the deed from Varner to Powers and the other deeds were, therefore, insufficient to vest any legal title in the plaintiff, they were sufficient to create color of title thereto. "Color of title" means semblance of title. It is an appearance of the title only. It arises when an instrument professes to pass title, but fails so to do because of lack of title in the person undertaking to make the conveyance. 1 Ruling Case Law, 707.

We find, therefore, that when Cyrus Powers in 1864 came into possession of the property now owned by the plaintiff, he had legal title back to the strip in dispute and a mere color of title to the strip itself.

There is no question that for more than 21 years Cyrus Powers and his grantees were in possession of at least a part of the tract now in dispute. That possession was in part by a barn covering part of the disputed land. This barn extended from the north line of the tract to within about eight feet of the south line thereof, and this

eight-foot strip was used as a way from the alley into plaintiff's lot. The testimony is quite conflicting as to whether or not this barn extended to Vine alley. In the view we take of the case it is unnecessary to determine this question.

If the plaintiff had no color of title to the tract in dispute, he could acquire by adverse possession thereof only that part of the tract of which he was in actual possession. A radically different rule prevails, however, where the occupant not only has possession but in addition thereto has color of title to the land possessed. In the latter case his possession is constructively extended to the entire tract by presumption of law unless an adverse party actually shows an adverse possession in him. 1 Ruling Case Law, 726, 727. In this case, therefore, the unquestioned possession of a part of the small tract was by the color of title constructively the possession of the whole, for no part of the strip is shown to have been adversely held by the opposing interests.

We accordingly find that the various holders of the legal title to the property now admittedly owned by the plaintiff, beginning with the ownership of Cyrus Powers in 1864, and their tenants, were at least constructively in the open, notorious, continuous, exclusive, and adverse possession of the tract in question.

It is not seriously denied by the defendant that some part of the disputed strip was continuously used and occupied by various persons holding under the Powers legal title, but it is claimed that the various possessory acts shown cannot be tacked or united in order to perfect a legal right by adverse possession. This contention is fundamen-

tally wrong. Possession of a tenant ordinarily is possession of the landlord. It is definitely settled by the recent case of *Zipf* v. *Dalgarn,* 114 Ohio St., 291, 151 N. E., 174, that where there is a privity between successive occupants a continuous and successive possession of all for 21 years will ripen into title. It is equally well settled that the privity between a landlord and tenant brings them within this class of occupants. In the case just cited the Supreme Court refers to Section 2527, vol. 3, Thompson on Real Property, and quotes therefrom with approval as follows:

"Privity that will permit the tacking of possessions exists between testator and devisee, between ancestor and heir, between landlord and tenant, between vendor and vendee."

In *Omaha & F. Land & Trust Co.* v. *Parker,* 33 *Neb.,* 775, 51 N. W., 139, 29 Am. St. Rep., 506, it is held that possession of land, to be adverse, must be made by means of actual entry and occupation thereof, but such possession may be made and continued either by the adverse claimant or by his agent or tenant for him.

In *Lindenmayer* v. *Gunst,* 70 Miss., 693, 30 So., 252, 35 Am. St. Rep., 685, it is further held that adverse possession by a nonresident maintained by his tenant will if sufficiently long continued create title by prescription.

In *Holmes* v. *Turners Falls Lumber Co.,* 150 Mass., 535, 547, 23 N. E., 305, 310, 6 L. R. A., 283, at page 289, it is said in the opinion:

"If one person disseises another of land, and while in possession leases the land to a tenant, who continues to occupy it under his lease, the adverse possession of the tenant may be tacked

to that of the landlord, and the possession of the tenant may be said to be that of the landlord.''

Again, in *Ramsey* v. *Glenny,* 45 Minn., 401, 48 N. W., 322, 22 Am. St. Rep., 736, it is held that the connected successive and continuous possession of a landlord by his tenant, his heirs and their grantees, to the land in dispute, may be tacked together so as to form a continuous and uninterrupted possession, adverse to the true owner, for the period of time essential to give title by adverse possession.

Further authority to the same effect may be found in 1 Ruling Case Law, 719.

It is clear, therefore, that the various leases made by the owner of this land and covering the property in dispute during the period from 1864 to the present time were competent evidence, not only to show adverse possession, but also to establish the privity between the owner and those actually occupying and using the property in dispute.

It is our conclusion, therefore, that the testimony relating to the acts of the various tenants was all competent and that the plaintiff has shown such adverse possession of the property in question as to vest in him the legal title thereto.

*Decree for plaintiff.*

MAUCK, J., concurs.
SAYRE, P. J., not participating.