JOHN B. PHELPS et al., Appellees, v. LOUIE KROLL et al., Appellants.

No. 40413.

FEBRUARY 17, 1931.

*Fred H. Free* and *Odean Hareid,* for appellants.

*H. Floyd Phelps* and *Roseberry & Roseberry,* for appellees.

DE GRAFF, J.—The original action was commenced to fore-

close a certain mortgage on Plymouth County, Iowa, land. The title holder and mortgagor of the land was a partnership, known as Sweet & Kroll. The mortgage, in the sum of $9,500, was given to D. A. Oltmann, who later assigned to a partnership known as Oltmann & Phelps, who, in turn, assigned to John B. Phelps (plaintiff). It was he who commenced the foreclosure action mentioned herein.

We are not concerned with the foreclosure proceeding. That matter has been fully completed. We are here concerned with the claim of the intervener Rock Island Plow Company, as as-signee of the partner Kroll of one half of the rents and profits arising from the land in question, as against the claim of the plaintiff John B. Phelps, who pleads and claims that he is entitled to the rents and profits *in toto* for the year 1929, because of a written but unrecorded assignment by the partnership of the lease and the rents and profits from the land. The reason will be presently stated.

The contention of the Rock Island Plow Company is that it held a valid and superior assignment to the interest of Louie Kroll, one of the partners in the firm of Sweet & Kroll, under and by virtue of a written recorded assignment made on or about March 7, 1929.

The instant petition was filed April 2, 1929, and therein is alleged and set forth a provision of the original mortgage. This provision pledges the rents, profits, and possession of said premises, and provides for the appointment of a receiver in the event of default in any respect of the terms of said mortgage, and that the receiver appointed shall have "the usual powers to take possession of said property, and collect and hold such rents and profits for the benefit of the plaintiff and subject to the order of the court." Upon the trial of the case, it was stipulated in open court by and between the parties that the plaintiff Phelps "is entitled to the appointment of a receiver, which said appointment shall in no way prejudice the rights of any of the parties or their claims concerning the rents and profits of the land at issue;" and in pursuance of said stipulations, George A. Phelps was appointed receiver, and with the consent of all the parties, he was joined as party plaintiff in this action.

The material chronology of the documents in question is

as follows: On February 23, 1927, R. J. Sweet and wife and Louie Kroll and wife executed an assignment as security for the payment of such sums as Oltmann & Phelps, a copartnership, has already loaned or may hereafter loan to R. J. Sweet and Louie Kroll, and the assignors Sweet & Kroll, as partners, did assign to Oltmann & Phelps all rentals and income to accrue or be earned on or from certain described Plymouth County, Iowa, land during the year period beginning March 1, 1929. It was further agreed that, on or before August 1, 1928, Sweet & Kroll would lease the premises for said year period "as may be consented to by and approved by the said Oltmann & Phelps, and to turn over and deliver the lease to the said Oltmann & Phelps, with all necessary assignments thereof." It was further agreed that, in the event that Sweet & Kroll failed to lease the premises and assign and turn over the said lease, Oltmann & Phelps should lease the said premises for said period in the name of Sweet & Kroll, and collect the said rentals and income and apply the same on the indebtedness hereby secured.

On March 2, 1929, Kroll and wife assigned to the Rock Island Plow Company a half interest in all rentals and income to accrue or to be earned on the land in question during the two years starting on March 1, 1929, and, in the event of a written lease on said premises, Kroll and wife agreed to assign the same to the Plow Company, and, in the event that the said premises were not leased within a reasonable time after March 1st in each year, the assignee Plow Company should have the privilege of negotiating a lease on the premises at a fair and reasonable rental. This assignment was acknowledged and filed for record in the office of the county recorder of Clay County, Iowa.

In the light of this record, the argument, as filed in this court by counsel for the appellee Phelps naturally groups itself into three primary propositions or divisions:

I. That the obligation of Sweet & Kroll, as a partnership, to the appellee John B. Phelps, an individual, and George A. Phelps, receiver, is paramount to the interests and equities of the individuals of the partnership and any party to whom they, as individuals, may assign.

II. That the assignment of the lease and evidence of rental indebtedness is not such an instrument as is required to be recorded by the statutes of Iowa.

III. That the possession of a tenant is notice of the rights of his landlord, and is the possession of his landlord.

I. It is a well established principle of law that the creditors of a partnership must be paid, and all their rights must be satisfied, and the rights and obligations of the partners, as between  themselves, must be satisfied, before the partner can take property from the partnership to pay his individual indebtedness. 47 Corpus Juris 936, 937; *Fargo & Co. v. Ames*, 45 Iowa 491; *In re Assignment of Cutler & Horgen*, 204 Iowa 739; *Schwanz v. Farmers Co-op. Co.*, 204 Iowa 1273; *Malvern Nat. Bank v. Halliday*, 195 Iowa 734; *Midland Nat. Bank v. Douglas*, 199 Iowa 1190. A corollary of this rule is that an assignee of such a partner has no greater rights than his assignor.

The obligations of the partnership of Sweet & Kroll in the instant case are controlled by three matters: First, a collateral agreement, in which Sweet & Kroll had assigned all their credits to Oltmann & Phelps, and through them, to the appellee Phelps; second, an assignment of the rent for the period from March 1, 1929, to March 1, 1930, which assignment went through the same channels to the appellee Phelps; third, a provision in the mortgage by which the receiver was entitled to take charge of the rents and profits for the benefit eventually of the appellee, a partnership creditor. Manifestly, the partner Kroll could not assign his personal interest in the assets of this partnership and thereby attempt to affect the previous partnership assignment.

It must be further observed that the mortgage executed by the partnership Sweet & Kroll contained a provision for the appointment of a receiver, and it was stipulated by the parties to this action that George A. Phelps should be the receiver, and he was duly appointed and qualified. This receiver was authorized to take charge of the rents and profits in question.

We are not thinking in terms of a receiver of an individual. The right to a receivership in the foreclosure of partnership property is the distinct right of a partnership creditor, which is controlled by the equities of such creditor, as well as the equities of the other partner. It is clear in this case that the partner Sweet had a right to have the partnership property exhausted in paying partnership debts through the receivership, and that all equities in favor of partnership creditors be pre-

served for such creditors. The equities of the partner Sweet and of the partnership creditors are superior to any equity of the individual partner Kroll and his assignee, the Rock Island Plow Company.

II. Was the assignment of the lease and the evidence of rental indebtedness, where delivery of the lease accompanies the assignment, such an instrument as is required by the statutes  of Iowa to be recorded? We answer in the negative. In the first place, these matters constitute a mere chose in action. In the second place, the assignee Phelps received the evidence of indebtedness, and the recording acts of the state of Iowa refer to personalty where possession is retained by the vendor or mortgagor. The statute does not authorize the recording of assignments of choses in action, and consequently the filing and recording of such instruments impart no notice to anyone. We are not dealing with a chattel mortgage, or with any instrument that in any manner relates to real estate. See Section 10066, Code, 1927.

The instant partnership, in assigning and delivering the lease on the real estate, surrendered all evidences of property in its possession. This court had occasion to speak of the effect of the Recording Act as affecting chattel property in *Case &amp; Co. v. Burrows,* 54 Iowa 679, in which case it reaffirmed the purpose and object of the statute (now Section 10015, Code, 1927). In the opinion of *Case &amp; Co. v. Burrows* (1880), supra, it is said:

"This section [1923, Code, 1873] is identical with Section 2201, Revision of 1860. In *Thomas v. Hillhouse,* 17 Iowa 67, it was held that this section of the statute had no application where personal property at the time of the sale was in possession of a lessee, and that a sale without a delivery of possession was valid. It is said in that case that 'the object and purpose of the statute was to prevent persons from acquiring or retaining credit by reason of the possession of personal property, which possession in the eye of the law is evidence of ownership, and to protect purchasers thereof from the fraud which might otherwise be practiced upon them by persons in possession of such property, and thus the ostensible owners of it.'"

The first assignment in the instant case, as heretofore stated, was the transfer of a mere chose in action. It was neither an assignment of chattel property nor of an interest in real estate.

In *Foster v. Kellogg* (Iowa), 195 N. W. 350 (not officially reported), an attorney took an assignment of all rents and profits derived from certain real estate, alleging the assignment to be superior against a subsequent mortgage. It is there said:

"An assignment of rents is not a transfer of an interest or estate in real estate."

Therefore, no interest in real estate was conveyed to the attorney. See, also, *Lufkin & Wilson v. Preston,* 57 Iowa 28; *Lawrence, Manning & Cushing v. McKenzie,* 88 Iowa 432; *Kuhnes v. Cahill,* 128 Iowa 594; *Aultman v. McConnell,* 34 Fed. 724; 16 Ruling Case Law 914, Section 421; 23 Ruling Case Law 176, Section 30; 5 Corpus Juris 908; 11 Corpus Juris 525.

III. The possession of a tenant is notice of the rights of his landlord, and is the possession of his landlord.

The record discloses that the premises in question were occupied by a party named Trometer, as a tenant, subsequent to March 1, 1928, and that this tenant had actual notice, previous  to March 1, 1929, of the existence of the assignment and that the rent for the ensuing year, subsequent to March 1, 1929, had been assigned. Furthermore, the tenant had seen the assignment to the plaintiff John B. Phelps. The partner Sweet was handling the affairs of the partnership during this time. The partner Kroll testified that he did not know the man who was the tenant on the farm, and that the bank was paying the taxes, and that he had not been near the farm for two or three years. The manager of the Rock Island Plow Company testified that he understood that the man Kroll, in assigning to the company, was assigning partnership property to pay his individual debts; that Kroll recorded the assignment at his expense; and that Kroll is hiring the lawyers, and looking after the entire matter.

At this point it may be stated that Kroll was indebted to the Plow Company for machinery that he had purchased, and that, to secure further credit, the assignment by Kroll to the Plow Company was given.

As heretofore stated, any party taking an assignment of rents and profits, as in this case, is subject to the rights of the parties in possession. The possession of the tenant Trometer was, in law, the possession of the appellee John B. Phelps.

It results, therefore, that the appellant Plow Company has failed to establish that its assignment from Kroll was the only valid and existing assignment of Kroll's interest in and to the leased premises. The decree of the trial court was correct, under the principles of equity jurisprudence, in awarding to the partnership creditor (appellee) and the receiver the rents and profits here involved.—*Affirmed.*

FAVILLE, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.