Stanley R. Pierce, Appellant, v. Frank T. Pierce, George C. Pierce and Alexander W. Pierce, Appellees.

Gen. No. 46,020.

Opinion filed September 29, 1953. Rehearing denied November 12, 1953. Released for publication November 12, 1953.

WILHARTZ & HIRSCH, of Chicago, for appellant; SAMUEL E. HIRSCH, and JACK A. DIAMOND, both of Chicago, of counsel.

MADIGAN & THORSEN, of Chicago, for appellees; ROBERT THORSEN, of Chicago, of counsel.

MR. JUSTICE TUOHY delivered the opinion of the court.

Plaintiff brought suit below to partition an interest created under a 99-year lease. Plaintiff owns 6/12ths, defendant George C. Pierce 1/12th, defendant Alexander W. Pierce 1/12th, and defendant Frank T. Pierce 4/12ths of the leasehold in question. Upon motions of defendants the complaint was dismissed for want of equity on the ground that a 99-year leasehold

may not be the subject of partition. The validity of this ruling is the sole question presented for our determination.

█ The ruling of the court was based on defendants' argument that partition is a statutory remedy (par. 44, ch. 106, Ill. Rev. Stat. 1951 [Jones Ill. Stats. Ann. 109.490(4)]); that the statute provides that when "lands, tenements, or hereditaments are held in joint tenancy or tenancy in common . . . persons interested therein may compel a partition thereof by complaint in chancery . . ."; that the term "lands, tenements and hereditaments" is technical in meaning and refers only to a freehold; that leases for years, no matter what the length of the term, are personal property and, therefore, not subject to partition. Defendants cite a number of cases in support of this position, all based upon the strict common-law definition of real and personal property, and quote extensively from *Mayor of New York v. Mabie,* 13 N. Y. 151, 158. There the court had under consideration the term "real estate," defined by the statute there involved as "co-extensive in meaning with lands, tenements and hereditaments." The court held that the legislature understood it was dealing with terms of art and was presumed to have used them in their technical sense. The court then adopted Coke's definition of these terms, as follows:

"Coke says that *'tenementum,* tenement, is a large word, to pass not only lands and other inheritances which are holden but also offices, rents, commons, profits *apprender* out of lands and the like, wherein a man hath any frank-tenement, and whereof he is seized *ut de libero tenemento.'* (1 Co. Litt. by Thomas, 219.) 'But hereditament,' he says, 'is the largest word of all that kind; for whatsoever may be inherited is a hereditament, be it corporeal or incorporeal, real, personal or mixed.' (Id). The first of these definitions requires

338

that the estate, or interest to amount to a tenement, should be a freehold at least; and to be termed a hereditament, according to the second, it must be descendible by inheritance. Terms for years fall within the definition of things personal. They go to the executors like other chattels; and although they are denominated chattels real to distinguish them from mere movables, they are not, when speaking with legal accuracy, considered real estate. (2 Bl. Com., 386.)"

Notwithstanding the recognition given to this English authority by a New York court some hundred years ago, we are not aided by these quaint, feudal distinctions in the solution of present day real estate problems. The value of Coke's definition and differentiations is largely academic in tracing the evolution of real estate law to its present stature. Furthermore, the reasoning of this case overlooks the fact that partition has long been an equitable remedy. In 68 C. J. S., Partition, sec. 61, the rule is stated:

"Although the courts of law in England from a date as early as the thirteenth century entertained actions to partition estates held in coparcenary . . . It has been stated that by later statutes the jurisdiction of the courts of law over partition was withdrawn and confined exclusively to chancery.

"The jurisdiction of courts of equity in cases of partition of real estate is very ancient and is now, and has been for a long time, one of their most useful and salutary powers."

In *Shippert v. Shippert*, 371 Ill. 267, the contention was made that the court had no power to enter certain portions of a decree under its general equity powers where the statute pertaining to partition had not so authorized. It was argued that there was no method other than that prescribed by the statute by which

partition may be had in this State. In denying such contention the court said (p. 271):

"Under the inherent power of the court of equity to do complete justice the chancellor had power, if it was shown to have been for the best interests of all concerned, to set off the home farm to the incompetents and to direct that the other farms be sold and the proceeds divided among the balance of the heirs. The power of a court of chancery to order a natural partition of a portion of the premises involved and a sale of the remainder is recognized by this court and authorities generally." .

■ The first statute on partition appears to have been passed in 1539 (31 Hen. VIII c.1). That was limited to lands, tenements and hereditaments. In 1540 a statute was passed (32 Hen. VIII c.32) extending the right of partition to include leasehold estates. Thus, for more than four hundred years the right of partition of leasehold estates has been recognized in English law. While the question has never been directly passed upon by courts of Illinois, it is our opinion that both by statute and by decision, Illinois has not adhered to the strict, technical, feudal definition of the term "real estate."

■ Chapter 30 of the Illinois Revised Statutes, dealing with conveyances, defines "real estate" as follows (par. 37) [Jones Ill. Stats. Ann. 29.39]: "The term 'real estate,' as used in this act, shall be construed as co-extensive in meaning with 'lands, tenements and hereditaments,' *and as embracing all chattels real. . . .*" A 99-year lease, being a chattel real, would come within the provisions of the above statute. Furthermore, the Judgments and Decrees Act, Illinois Rev. Statutes, chap. 77, par. 3 [1951; Jones Ill. Stats. Ann. 107.153], defines "real estate" as follows: "The term 'real estate,' when used in this act shall include lands,

340

tenements, hereditaments, and all legal and equitable rights and interests therein and thereto, including estates for the life of the debtor or of another person, and estates for years, and leasehold estates, *when the unexpired term exceeds five years."* (Italics ours.)

██ It is argued by defendants that these definitions are limited to the purposes of the particular statutes, and if it had been intended to enlarge the definition of lands, tenements and hereditaments in the Partition Act, the legislature would have made a similar provision therein. There is some merit in an argument of this sort, but when we consider that we are some centuries removed from these terms, we believe that the legislature did not have in mind the feudal definition of the term; that if it had been called to their attention, as it was in the Acts relating to conveyancing and judgments, a similar definition would have been included. While there is some authority outside this State, particularly *Orchard v. Wright-Dalton-Bell-Anchor Store Co.,* 225 Mo. 414, in support of defendants' position, we are of the opinion that the policy of this State, as settled by the cited cases, is to the contrary. Illinois courts have both impliedly and expressly not adhered to these technical definitions.

In *McIlvaine v. Foreman,* 292 Ill. 224, there is a strong implication that an interest in real estate created under a valid 99-year lease might be the subject of partition. In that case the owners of improved property in the City of Chicago executed a 99-year lease to an Illinois corporation, the object of which corporation was ". . . the erection of buildings and the construction and leasing of safety deposit vaults and the acquiring of leasehold estates . . . ." Later a bill for partition was filed by certain trustees of the leasehold estate. The court and counsel, who were among the most eminent experts in real estate law then practicing

341

in Chicago, took it for granted that a partition suit would lie, and no point was made of that fact. However, the court decided the case on another point, stating at page 229 as follows:

"We think it clear from the stipulation of facts filed in this cause that the only purpose of the organization of this corporation was the acquiring and holding of this piece of real estate as an investment, and it is equally clear that this object and purpose are against our statute and against the declared public policy of this State. . . .

"Appellees seek by this proceeding to partition the alleged leasehold interest in this property. In order to entitle them to a decree ordering partition it was necessary for them to show title to the property. As we have seen, the lease taken by the Dakota Building Company was wholly void and therefore no title was conveyed by the company to the appellees."

In *People v. Hardt,* 329 Ill. App. 153, defendant was indicted under section 192 of the Criminal Code [Ill. Rev. Stats. 1951, ch. 38, § 425; Jones Ill. Stats. Ann. 37.378], the pertinent portions of which are as follows: "Whoever willfully and maliciously destroys, injures or defaces any building or fixture attached thereto, without consent of the owner . . ." shall be punished etc. The theory of the plaintiff in error was that the meaning of the word "owner" as used in the statute defining the crime of malicious mischief includes the interest of tenants in possession of a building under a lease. The defendant in error maintained that the word "owner" as used in the statute meant owner in fee simple. The court said at page 158:

"A 'lease' is a conveyance of an estate in real property (*In re Barnett,* 12 F (2d) 73; *Minneker v. Gardiner,* 47 Ohio App. 203, 191 N. E. 793; *Brenner v. Spiegle,* 116 Ohio St. 631, 157 N. E. 491). The possession

of the tenant is in law the possession of the landlord. (*Phelps v. Kroll,* 211 Iowa 1097, 235 N. W. 67; *Powers v. Malavazos,* 25 Ohio App. 450, 158 N. E. 654; *Mc-Whorter v. Oliver* (Tex. Civ. App.), 2 S. W. (2d) 281.) The title to a leasehold estate which a lessee has during the life of a lease is equivalent for all practical purposes to absolute ownership. (*Baker v. Clifford-Mathew Inv. Co.,* 99 Fla. 1229, 128 So. 827.)"

In the case of *Imperial Building Company v. Chicago Open Board of Trade,* 238 Ill. 100, decided in 1908, the court held that the formation of a corporation for the purpose of acquiring real estate for investment was illegal under the laws of the state of Illinois. The contention was there made that procuring a lease for 99 years is not acquiring real estate, but a leasehold interest which should be treated as personal property. The court disagreed with this contention in the following language (p. 107):

"It is true that a leasehold interest in land is for some purposes treated as personal property, but generally it is considered a chattel real. . . . To hold otherwise in a case of this character would be to permit corporations to do indirectly what the statute forbids them doing directly."

What we have before us is solely a question of whether a court of chancery should be open to the part owner of a leasehold interest, seeking to dissolve his joint interest. In that respect this proceeding is akin to a dissolution of a partnership. It is a proceeding now known to the law for more than four hundred years. In the intervening period, long-term leases have become a common method of land holding in our country, and under such leases, great industrial, commercial and residential enterprises have been built. For many purposes, only some of which have been herein described, they have the stature of real estate

343

and are treated as within the definition of "lands, tenements and hereditaments." It would in our opinion be inequitable to deny a part owner of such an interest the right to partition.

Accordingly, the decree of the superior court of Cook county is reversed and the cause remanded with directions to proceed in a manner consistent with the views herein expressed.

*Decree reversed and cause remanded with directions.*

SCHWARTZ, P. J. and ROBSON, J., concur.