Catherine Gustafson SKINNER, and L. R. Gajewski, Plaintiffs and Respondents,

v.

AMERICAN STATE BANK and K. M. McConnell, Defendants and Appellants.

Civ. No. 8711.

Supreme Court of North Dakota.

Sept. 1, 1971.

Bjella & Jestrab, Williston, for defendants and appellants.

L. R. Gajewski and Catherine Gustafson Skinner, pro se.

ERICKSTAD, Judge (on reassignment).

The defendants, American State Bank and K. M. McConnell, appeal from the amended order of the district court of the County of McKenzie, dated February 1, 1971, which directs that the clerk of the district court pay to Mr. L. R. Gajewski cash rental monies deposited with the clerk. We shall hereinafter refer to the plaintiffs in the singular as Mr. Gajewski, unless there is some reason for differentiating between the plaintiffs, and shall refer to the defendants as the Bank, unless there is some reason for differentiating between the defendants.

The American State Bank is a North Dakota banking corporation with its principal place of business located in Williston, North Dakota. Mr. K. M. McConnell is the Executive Vice President of the Bank.

On April 1, 1969, the plaintiff Catherine Gustafson Skinner and her husband, N. David Skinner, executed and delivered to the defendant, American State Bank, a real estate mortgage and an assignment of rents. The mortgage was filed in the office of the register of deeds, McKenzie County, North Dakota, on April 10, 1969, at 1:00 p. m., and recorded in Book 144 of Mortgages, beginning at page 325. The assignments of rents was filed by the Bank in the office of the register of deeds, McKenzie County, North Dakota, on April 10, 1969, at 1:10 p. m., and recorded in Book 144 of Mortgages, beginning at page 325. Under the terms of the mortgage and the note it was given to secure, the Skinners were to pay to the defendant, American State Bank, on or before April 1, 1970, the sum of $175,000 together with interest. This sum was not paid and the mortgage is in default.

On July 25, 1969, the Skinners leased the premises to Floyd G. Kindel and Delores Kindel, husband and wife.

On November 3, 1969, the Skinners executed and delivered to Mr. L. R. Gajewski a warranty deed covering the same premises mortgaged to the Bank.

On December 7, 1970, the Bank notified the lessees in writing of the default in the real estate mortgage and of the assignment of rents and demanded payment to it of the rental due under the lease.

On January 5, 1971, Mr. Gajewski entered into a lease of the same premises with Floyd G. and Delores Kindel. The Kindels thereafter deposited the rental money with the clerk of the district court of McKenzie County pursuant to Section 32–11–02, N.D. C.C. The real estate mortgage has not been foreclosed, but according to the affidavit filed by the Kindels with the clerk of the district court in connection with the voluntary deposit, Mrs. Skinner and Mr. Gajewski have brought an action against the American State Bank of Williston and K. M. McConnell, apparently to determine the legality of the mortgage and the assignment of rents.

In an attempt to secure payment from the clerk of the district court of the rentals placed there by the Kindels, Mrs. Skinner and Mr. Gajewski moved, by instrument dated the 20th of January, 1971, that the district court of McKenzie County order the clerk of McKenzie County district court to release and pay over to Mr. Gajewski the rental monies therein deposited by the Kindels in the sum of $4500. It is from the order of the district court granting that motion that the Bank and Mr. McConnell appeal.

The motion was made on the ground that Mr. Gajewski is entitled as a matter of law to the rents and profits flowing from the real property described in the deed which he received from the Skinners until such time as the mortgage to the Bank has been foreclosed and thereafter until the statutory one-year period of redemption shall have expired. Although no memorandum opinion was filed by the court and the order contains no explanation of the court's conclusion that the monies should be paid to Mr. Gajewski, we assume that the court granted the order on the ground stated by Mr. Gajewski.

 The substantive law issue in this case is whether an assignment of rents of real property can be enforced prior to the foreclosure of the real estate mortgage and the expiration of the one-year period of redemption.

The parties in this lawsuit rely basically upon two opinions of this court to sustain them. Mr. Gajewski relies on the opinion of Smith v. Grilk, 64 N.D. 163, 250 N.W. 787, a 1933 decision of this court, written by Judge Birdzell and concurred in by Judges Nuessle, Burr, and Burke, with Judge Christianson dissenting.

The decision relied on by the Bank is Fargo Building & Loan Association v. Rice, 66 N.D. 100, 262 N.W. 345 (1935), written by Judge Burke and concurred in by Judges Burr, Nuessle, Morris, and Christianson.

The issue involved in *Smith* is set forth by the Court in the first paragraph of the opinion, as follows:

"The question argued concerns only the rents during the period of redemption. It is the contention of the appellants that the mortgagor is entitled to the rents, while the respondent claims them under an assignment, and contends that a receiver was properly appointed for the purpose of collecting rent during the period of redemption." Smith v. Grilk, 64 N.D. 163, 250 N.W. 787, 788 (1933).

In that case, concurrently with the execution of the mortgage and by separate instrument, Mr. Grilk assigned to the mortgagee the rents, issues, and profits of the property. By way of legislative history and in discussion of the issue, the court said:

"Section 6740, Compiled Laws of 1913, provides: 'A mortgage does not entitle the mortgagee to the possession of the property, unless authorized by the express terms of the mortgage; but after the execution of a mortgage the mortgagor may agree to such change of possession without a new consideration. No person whose interest is subject to the lien of a mortgage may do any act which will substantially impair the mortgagee's security.'

"Section 7762 of the 1925 Supplement to the Compiled Laws of 1913 (chapter 132, Laws of 1919) provides: 'The debtor under an execution or foreclosure sale of his property shall be entitled to the possession, rents, use and benefit of the property sold from the date of such sale until the expiration of the period of redemption'.

"The main contention of the appellant is based upon this statute. It is said, in substance, that it evidences a policy to secure to the mortgagor during the redemption period all the benefits of possession, including the rents and profits.

"The history of our legislation concerning mortgages and their foreclosure shows that almost from the beginning a foreclosure sale affected the possessory right of the mortgagor. By section 11 of chapter 15 of the Session Laws of Dakota Territory for 1864–65, it was provided that no mortgagor should be entitled to retain possession of the mortgaged premises after the sale thereof, although having a year thereafter in which to redeem. Similar or analogous provisions remained in our statutes down to the year 1919. Hence, along with section 6740, supra, which was section 1733 of the

Civil Code of 1877, there was also a provision to the effect that the purchaser from the time of sale until redemption, and the redemptioner from the time of his redemption until another redemption, was entitled to receive from the tenant in possession the rents of the property sold, or the value of the use and occupation thereof. Section 353, Code of Civil Procedure 1877; section 7762, supra. The two sections in their treatment of the right to possession were consistent. While the mortgage only created a lien and did not in itself entitle the mortgagee to possession, the statute expressly recognized as valid any provision in a mortgage that would give possession to the mortgagee in advance of foreclosure. And in the absence of any specific agreement, under section 7762, and going as far back as the session of 1864–65 of the territorial Legislature, the purchaser at the sale would be entitled to possession and the benefits of possession immediately after the sale. When in 1919 the Legislature changed the law with respect to the possessory right of the debtor or mortgagor during the period of redemption it established a policy that is altogether different from that evidenced by the old statutes, and we are confronted with the question as to whether or not the newer legislation is so inconsistent with the former that the two cannot exist side by side." Smith v. Grilk, 64 N.D. 163, 250 N.W. 787, 789, 790 (1933).

In discussing the change in policy brought about by the enactment of Chapter 132 of the Session Laws of 1919, the Court quoted from one of its earlier opinions, Farm Mortgage Loan Company v. Pettet, 51 N.D. 491, 504, 200 N.W. 497, 502 (1924), as follows:

"After quoting chapter 132, Laws of 1919, the court said * * *: 'We believe that the Legislature intended to settle beyond cavil the question of the right of the mortgagor to the use and benefit of the property until his title to the premises was divested by foreclosure and expira-

tion of the period of redemption. It must be noted that the Legislature here is dealing with a fundamental, as distinguished from a remedial, right. It must also be noted that there is, in the enactment of this statute, a complete reversal of legislative policy. Prior thereto, under section 7762, C.L.1913, the purchaser was entitled to receive from the tenant in possession the rents of the property purchased or the value of the use and occupation thereof. This statutory enactment, prior to the amendment, gave the purchaser a valuable right. See Crippen v. Morrison, supra [13 Mich. 23]. The rule of the statute was contrary to the current of authority in this country in the absence of a similar statutory provision. It was generally held, at least in those jurisdictions where the lien theory of the mortgage prevailed, that the mortgagor was entitled to the rents and profits and the beneficial use of the property until his title was divested in perfected foreclosure proceedings. Such, however, was not the legislative policy of this jurisdiction. The Legislature was not satisfied to leave the question as to the rights to the rents and profits to be solved by reference to common law or general rules; *it affirmatively, in language that cannot be misunderstood, says not only that the mortgagor shall be entitled to the possession and the rents, but that he shall be entitled to the "use and benefit of the property" during the period of redemption.* There are no conditions or qualifications attached. It is difficult without resorting to technical reasoning, to see how the literal import of the language of the statute can be avoided. There can be no question about the legislative purpose. It was *to insure the mortgagor, for himself and his family, the beneficial use of the property* during the period of redemption. We have no power to read conditions, exceptions, or qualifications into this statute; or to permit that to be done by indirection which the Legislature has said shall not be directly accomplished.'"

After the quotation from *Farm Mortgage Loan Company*, the Court in *Smith* said:

> "Nowhere, we believe, is there a stronger expression of a legislative policy to protect the mortgagor in the enjoyment of the benefits of possession of the mortgaged property during the period of redemption and until completion of the foreclosure proceedings than that quoted from the opinion of this court immediately above."

To further support its opinion, the Court, relying on 2 Jones on Mortgages, 8th ed. § 826, said:

> " '[A]lthough the mortgage contains a stipulation which seems to give the mortgagee the right after condition broken to take possession and receive the rents and profits, yet inasmuch as such a mortgage gives only a lien upon the mortgaged property and the rents and profits, and this lien can be enforced only by action, the stipulation does not transfer to the mortgagee the title to the rents and profits.' " Smith v. Grilk, 64 N.D. 163, 250 N.W. 787, 792 (1933).

Section 28-24-11, N.D.C.C., is the successor of Chapter 132, Section 1, of the Session Laws of 1919. It reads:

> "28-24-11. Debtor entitled to rents during redemption period.—The debtor under an execution or foreclosure sale of his property shall be entitled to the possession, rents, use, and benefit of the property sold from the date of such sale until the expiration of the period of redemption."

Subsections 6 and 7 of Section 35-03-01.2, N.D.C.C., are the successors to Section 6740 of the Compiled Laws of 1913. Said subsections read as follows:

> "6. A mortgage does not entitle the mortgagee to the possession of the property, but after the execution of a mortgage, the mortgagor may agree to the change of possession without a new consideration.

> "7. The assignment of a debt secured by a mortgage carries the security with it."

Two years after *Smith*, this Court rendered the *Fargo Building & Loan Association* decision relied on by the Bank to support its contention that the rights provided for in Section 28-24-11, N.D.C.C., accrue only after foreclosure and during the period of redemption.

In *Fargo Building*, in discussing the effect of Chapter 132 of the 1919 Session Laws, after discussing the holding in Clifford & Co. v. Henry, 40 N.D. 604, 169 N.W. 508 (1918), construing Section 7762 as it existed prior to the enactment of Chapter 132 of the Session Laws of 1919, the Court said:

> "The Legislature at the next session, and within four months after the filing of this decision, enacted chapter 132, amending the law so as to give to the mortgagor the possession, rents, use, and benefit of the property sold from the date of such sale until the expiration of the period of redemption. That is all that it does do. It does not relate to any time excepting the period of redemption and while 'repugnancy may effect an implied repeal only pro tanto to the extent of the repugnancy * * * the courts will not enlarge the meaning of one act in order to hold that it repeals another by implication, nor will they adopt an interpretation leading to an adjudication of repeal by implication unless it is inevitable, and a very clear and definite reason therefor can be assigned.' "

In the next paragraph of that decision, the Court, in discussing the effect of Smith v. Grilk, said:

> "The court in the case of Smith v. Grilk, supra, went as far as it could in holding that the mortgagor's assignment of rents and profits, during the year for redemption, was inconsistent with the

policy of chapter 132, Session Laws 1919 (1925 Supp. § 7762), and that portion of the statute was repealed by implication. Under this decision the mortgagor and the mortgagee may make any contract that they could have made prior to the amendment, except that, at the time of the execution of the mortgage, and as a part of the same transaction, they cannot, by contract, deprive the mortgagor of his statutory right to the rents and profits or the use and occupation of the mortgaged property during the year of redemption. In this case there has been no foreclosure. The period of redemption is not involved, and therefore chapter 132 of the Session Laws of 1919 (section 7762, 1925 Supp.) is not involved." Fargo Building & Loan Association v. Rice, 66 N.D. 100, 262 N.W. 345 (1935).

Were it not for such strong language, it might be possible to distinguish the two cases on the basis of fact, inasmuch as in *Fargo Building* the plaintiff was a mortgagee in possession of the mortgaged property with the consent of the mortgagor, whereas in the instant case, a lessee of the mortgagor is in actual possession of the property and, consequently, the mortgagee is not in actual possession of it.

Notwithstanding the strong language restricting the mortgagor's rights to the rents and profits of the real property to the period of redemption, our State Legislature has not acted to substantially change the statute. Our Court in Lapland v. Stearns, 79 N.D. 62, 54 N.W.2d 748 (1952), set forth in the syllabus two rules of construction applicable in such cases as follows:

"2. In the enactment of a statute earlier acts on the same subject are generally presumed to have been within the knowledge and consideration of the legislature and the new statute is regarded as having been adopted in the light of former statutes and with reference thereto.

"3. It is generally held that the construction by the courts of last resort of former statutes is presumed to have been considered by the legislature in the enactment of a new statute on the same subject and may be considered by the courts in the construction of the latter statute on the same subject." Lapland v. Stearns, 79 N.D. 62, 54 N.W.2d 748 (1952).

In a more recent decision concerning the construction of a statute, we said:

"The legislature, in failing to amend the statute in light of the court's construction, has acquiesced in that construction, and thus has indicated that the construction is in accord with legislative intent.

"'* * * The construction of a statute by the courts, supported by long acquiescence on the part of the legislature, or by continued use of the same language, or failure to amend the statute, is evidence that such construction is in accordance with the legislative intent. [Citing Commissioner of Banking and Insurance v. Moresh, 122 N.J.L. 177, 3 A.2d 638 infra.] * * *'

"Barringer v. Miele, 6 N.J. 139, 77 A.2d 895, 897." Kline v. Landeis, 147 N.W.2d 897, 902 (1967).

*Fargo Building* is subsequent in time to *Smith* and thus if inconsistent in any way with *Smith* must be considered to overrule the pronouncements to the contrary in *Smith*. Considering that the amendments made to the statutes since *Fargo Building* appear only to affect the form of the statutes rather than their meaning, we conclude that the Legislature has agreed with the construction placed upon the statutes by the latter decision. As no extraordinary facts or circumstances have been brought out in this case justifying a reversal of the latter decision, we apply it in this case and, accordingly, conclude that the Bank is entitled here to the rents and profits of the real estate under the assignment.

■ Before we may conclude this opinion, we must determine a jurisdictional question raised by Mr. Gajewski, and that is

whether the appeal is proper in light of the fact that the Bank took its appeal before the order appealed from had been filed in the office of the clerk of the district court. The amended order directing the clerk of the court to pay over cash rental monies to Mr. Gajewski is dated the 1st of February, 1971, and was filed with the clerk of the district court on February 11, 1971. The notice of appeal by the Bank is dated the 10th of February, 1971, and was filed with the clerk of court on February 11, 1971. The notice of the entry of the amended order prepared by the attorney for the Bank, dated February 10, 1971, was filed with the clerk of court on February 11, 1971. The affidavit of service by mailing of the notice of appeal and the supersedeas bond is dated the 10th of February, 1971, as is the bond. The basic question is whether any of these factors make the appeal premature. We think not.

The pertinent statute on appeal follows:

"28-27-04. Time for appeal.—An appeal from a judgment may be taken within ninety days after the entry thereof by default or after written notice of the entry thereof, in case the party against whom it is entered has appeared in the action, and *from an order within sixty days after written notice of the same shall have been given to the party appealing.*" N.D.C.C. [Emphasis added.]

In 1930 this Court stated in Citizens' National Bank of Northwood v. Larson, 59 N.D. 427, 230 N.W. 292, 293, that, "The finality of such an order for purposes of appeal is not affected by the date of filing." The Court went on to cite Lake Grocery Co. v. Chiostri, in which the respondent contended that the appeal was void because it was premature. The Court said:

"If respondent's contention is correct, by simply serving and withholding from record the original order, the 60 days time for filing could be set in motion, and yet no appeal could be taken. Appellant's only remedy would be to resort to legal proceedings to compel the filing of the original. We do not believe this was the legislative intent." Lake Grocery Co. v. Chiostri, 31 N.D. 616, 154 N.W. 533 (1915).

We conclude, accordingly, that an appealing party may waive the service of a written notice of the entry of a district court order and may appeal from such an order before the order is filed with the clerk of the district court. Accordingly, the appeal was not defective or premature in this case.

For reasons stated in this opinion, the order of the trial court is reversed.

STRUTZ, C. J., and PAULSON, J., concur.

TEIGEN, Judge (dissenting).

I dissent.

I would agree with the result in the majority opinion were it not for the fact that the land was transferred by the mortgagors to the plaintiff Gajewski subsequent to the time the mortgage and the assignment of future rents were given to American State Bank by the former owners, Mr. and Mrs. Skinner. It is established, as stated in the majority opinion, that no foreclosure of the mortgage has been commenced. The assignment of future rents is made operative only in case of default in the covenants, terms and conditions of the note and mortgage. There apparently was no default of mortgage payments at the time the land was conveyed by the Skinners to Gajewski, and the rights given the American State Bank under the terms of the assignment of future rents were not being exercised. There is no evidence that Gajewski had knowledge of the existence of the assignment of rents when he acquired the land by conveyance from the Skinners. An examination of the warranty deed by which the lands were conveyed to Mr. Gajewski discloses that said deed purports to convey this land free from all encumbrances except the mortgage. No reference is made to the assignment of rents therein. The

warranty clause of the deed warrants the land conveyed "together with all the hereditaments and appurtenances thereunto belonging or in anywise appertaining to" Gajewski, his heirs and assigns forever. The grantors covenant that they are well seized in fee of the lands and have the right to sell and convey the same free of all encumbrances, except the mortgage. The deed recites, however, that the mortgage is void because of a latent defect in that at the time the mortgagors signed the mortgage the land description was not contained therein and was inserted afterwards. No question is raised in this proceeding of the effect of this statement nor is the validity of the mortgage in issue.

The assignment of future rents describes the property described in the mortgage and assigns, sets over, attorns and delivers to American State Bank, the mortgagee, all of the Skinners' "right, title, interest and demand in and to the rents, issues and profits" of the land. It also constitutes American State Bank as agent or attorney for the purpose of collecting said rents, and as attorney in fact for the Skinners to renew any and all leases and also to make new leases in regard to the premises. The assignment provides, however, that it shall not become operative and effective unless default shall be made in the covenants, terms and conditions of the note and mortgage. The assignment of future rents is dated the same day as the mortgage and was filed for record in the office of the register of deeds and there recorded on the same date as the mortgage.

The record made in this proceeding is completely devoid of any evidence or proof to establish that Gajewski had any knowledge whatsoever of the assignment of rents until the demand was made. As stated by the majority, the trial court did not state its reasons for its decision. Further, Gajewski appeared pro se at the hearing and has taken the appeal pro se. He is not a lawyer. There is no evidence that Gajewski has assigned future rents nor that he, in any way, has acquiesced in or agreed

to the terms of the assignment of rents given by the Skinners.

"Purchasers of land are generally deemed to have notice of facts appearing in a deed through which they deraign title. If they acquire title under a deed which shows that the premises have been leased and the rent assigned or if there are other circumstances present in their acquisition of the premises, through which they are given notice of such fact, they hold the premises subject to the rights of the assignee. Conflicting rights as between one claiming under an assignment of future rents and one who has purchased the reversion without knowledge of such assignment may be resolved according to whether the assignment is an instrument which is required to be recorded in order to be effective as against bona fide purchasers." 49 Am. Jur.2d Landlord and Tenant, Section 535.

"It is well settled that rent to accrue is an incident to and accompanies the reversion unless separated by an express reservation; therefore, as a general rule, upon a transfer of the reversion by the landlord, his transferee is entitled to receive all rent thereafter accruing, whether payable in money or in a share of the crops, and to retain it as against any claim of the transferor, including a claim for apportionment of the rent payable for a period which had partially run at the time of the transfer. The effect of the transfer itself, under modern decisions and statutes dispensing with the necessity of an attornment, is to create such a privity of estate between the grantee of the reversion and the lessee as will enable the grantee to enforce the obligation of the tenant to pay rent. Moreover, liability of the tenant to the grantee of the reversion can be predicated upon an express agreement of the former to pay rent, pursuant to the principle, heretofore discussed, that such an agreement is one which runs with the land. Such liability can be asserted in an action by the grantee against the

tenant." 49 Am.Jur.2d Landlord and Tenant, Section 530.

American State Bank gave notice to Gajewski, to the Skinners, and to the tenant that the mortgage was in default and that it was exercising its rights and prerogatives under the assignment of rents, and demanded that the tenant pay the future rents to American State Bank of Williston. This demand was made December 7, 1970, more than eleven months after the land had been conveyed to Mr. Gajewski. The evidence does not establish that Gajewski had previous actual knowledge of the assignment of rents. I shall now consider whether he had constructive notice thereof.

Our statute provides that the depositing with the proper officer for record of any instrument shall be constructive notice of the execution of such instrument to all purchasers and encumbrancers subsequent to such depositing if the instrument is subsequently recorded. Section 47–19–45, N.D.C.C.

Section 47–19–01, N.D.C.C., provides:

"Any instrument *affecting the title to or possession of real property* may be recorded as provided in this chapter." [Emphasis added.]

Section 47–19–19, N.D.C.C., provides:

"The record of any instrument shall be notice of the contents of the instrument, as it appears of record, as to all persons."

The question arises: Does an assignment of future rents affect "the title to or possession of real property," as required by Section 47–19–01, N.D.C.C., to entitle it to be recorded? If it was not entitled to be recorded, then certainly the deposit and recording of the same in the office of the register of deeds does not constitute constructive notice to a subsequent purchaser of the land.

"The record of an instrument does not constitute constructive notice, if it is not of a class which is authorized or required by law to be recorded. So, in a jurisdiction where a personal covenant or agreement restricting the use of land is not entitled to record, it is held that the instrument, even if recorded, is not constructive notice to subsequent purchasers. Where the recording statutes are inapplicable to assignments of choses in action, the assignment of a fund does not by being recorded become operative against persons having no notice thereof." 45 Am.Jur. Records and Recording Laws, Section 107.

My research has failed to disclose a special statute which entitles an assignment of rents to be recorded in the office of the register of deeds.

The lease in this case is a cash payment farm lease. Under its terms the tenant agrees to pay the sum of $6,500 per year for a term of three years. The payment becomes due on January 1 of each year the lease is in effect.

The determination of the question as to whether an assignment of rents to accrue from the leasing of real property comes within the operation of the recording laws depends upon the view taken as to the nature of an assignment of future rents. 75 A.L.R.Anno.—Recording Laws—Assignment of Rent, at 270.

According to 45 Am.Jur. Records and Recording Laws, Section 47, an assignment of rents to accrue from a lease of realty is an incorporeal hereditament and comes within the operation of the recording laws "provided the term covered by the assignment is sufficiently long to bring it within such laws." The holding in the case cited was based on a statute requiring that leases of more than three years' duration were required to be recorded. This section provides, however, that a contrary conclusion has been reached where it is held that such a transaction is merely the transfer of a

chose in action. In some cases the assignment of rent to accrue from the lease of real estate has been construed as a tenement or as a chattel real, and also has been classified as an incorporeal hereditament. 49 Am.Jur.2d Landlord and Tenant, Section 515. A chose in action is defined as personal property. 42 Am.Jur. Property, Section 26. A chattel real is also classified as personal property unless modified by statute. 42 Am.Jur. Property, Section 25. A tenement is usually denominated as real property. 42 Am.Jur. Property, Section 16.

Under our statutes, income of property includes the rents and profits of both personal and real property. Section 47–03–01, N.D.C.C. The disposition of the income of property to accrue and to be received at any time subsequent to the execution of the instrument creating such disposition is governed by the rules prescribed by the chapter on future interests. Section 47–03–02, N.D.C.C. A future interest is defined by statute to mean "that the owner is entitled to the possession of the property only at a future period." Section 47–02–11, N.D.C.C. It is either vested or contingent. It is contingent if the event upon which it is limited to take effect remains uncertain. Section 47–02–15, N.D.C.C. A future interest passes by succession, will or transfer in the same manner as present interests. Section 47–02–18, N.D.C.C. The statute limits the recognition of future interests to those provided by law. Section 47–02–21, N.D.C.C.

The right to exercise the assignment of rents in this case is dependent upon the event of default in the making of the mortgage payments. It is a general assignment of rents, having reference to no specific lease of the real estate in question and is to continue in effect until the note and mortgage described therein have been fully paid and satisfied. It provides that a release of the mortgage constitutes a release of the assignment of rents. The lease was not of record at the time the land was conveyed to Gajewski and, as I have pointed out earlier, the warranty deed conveying the land to him makes no reference to the lease.

The assignment of rents to accrue in the future, contingent upon default of the mortgage, does not purport to constitute an assignment of the lease in existence at the time the transfer was made to Gajewski. It is my opinion that the assignment of rents, in this instance, did not create an estate, or interest, or title, or the right of possession in the land. The future interest created under the assignment of rents was contingent because the event upon which it was limited to take effect remained uncertain and did not affect "the title to or possession of real property" as required by our recordation statute. Section 47–19–01, N.D.C.C. The recordation of the assignment, not being contemplated by the statute, constituted no notice to Gajewski of the assignment by the Skinners of future rents to the Bank. It is merely an assignment of the right to collect moneys which may become due in the future and, as such, does not affect or concern the real property. In my opinion it constitutes an assignment of a contingent chose in action, which is personal property, and does not come within our recording laws.

For these reasons, the recording of the assignment of rents did not constitute constructive notice to Gajewski and the trial court's order should be affirmed.

For cases arriving at a similar result see: Phelps v. Kroll, 211 Iowa 1097, 235 N.W. 67 (1931); Conley v. Fine, 181 App.Div. 675, 169 N.Y.S. 162 (1918); Washoe County Bank v. Campbell, 41 Nev. 153, 167 P. 643 (1917); Harris v. Taylor, 35 App.Div. 462, 54 N.Y.S. 864, appeal dismissed, 159 N.Y. 533, 53 N.E. 1126 (1899).

KNUDSON, J., concurs in the above dissent.